HOLLAND & KNIGHT LLP
Ana Dragojevic (SBN 341847)
560 Mission Street
Suite 1900
San Francisco, CA 94105
Telephone: 415.743.6900
E-mail: ana.dragojevic@hklaw.com

Attorneys for Defendants
CARRINGTON MORTGAGE SERVICES, LLC &
CARRINGTON FORECLOSURE SERVICES, LLC
N/K/A VYLLA SOLUTIONS, LLC

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **WILLIAM BLACKWELL AND LORETTA BLACKWELL,**<br><br>Plaintiff,<br><br>vs.<br><br>**CARRINGTON MORTGAGE SERVICES, LLC AND CARRINGTON FORECLOSURE SERVICES, LLC, DOES 1-15**<br><br>Defendants. | Case No.:<br><br>[Removed from the Superior Court of California, Monterey County, Case No. 25CV001278]<br><br>**NOTICE OF REMOVAL** |

///
///
///
///
///
///
///
///
///
///

Holland & Knight LLP
560 Mission Street, Suite 1900
San Francisco, CA 94105
Tel: 415.743.6900
Fax: 415.743.6910

- 1 -
NOTICE OF REMOVAL

Holland & Knight LLP
560 Mission Street, Suite 1900
San Francisco, CA 94105
Tel: 415.743.6900
Fax: 415.743.6910

**TO THE PLAINTIFF TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD::**

**PLEASE TAKE NOTICE THAT** pursuant to 28 U.S.C. §§ 1332, 1441 and 1446, Defendants Carrington Mortgage Services, LLC ("CMS") and Carrington Foreclosure Services, LLC[1] now known as Vylla Solutions, LLC ("Vylla") (collectively "Defendants"), hereby remove the state court civil action known as *William Blackwell and Loretta Blackwell v. Carrington Mortgage Services, LLC and Carrington Foreclosure Services, LLC,* Case No. 25CV001278, from the Superior Court of the State of California, in and for County of Monterey, to the United States District Court for the Northern District of California. Removal is based on 28 U.S.C. §1441 because this Court has jurisdiction pursuant to 28 U.S.C. §1332. Removal is warranted based on the following:

**A.      Defendants Have Satisfied the Procedural Requirements for Removal**

1.      On or about March 10, 2025, Plaintiffs William Blackwell and Loretta Blackwell (collectively "Plaintiffs") filed a Complaint in the Superior Court of the State of California, in and for the County of Monterey (the "State Court").   In compliance with 28 U.S.C. § 1446(a), a true and correct copy of all process, pleadings, and orders served upon CMS and Vylla is attached hereto as **Exhibit A.**

2.      Plaintiff served CMS and Vylla on April 2, 2025.

3.      Therefore, this Notice of Removal is timely in that it was filed within thirty (30) days of the service of the Complaint and less than a year after the commencement of the State Court Action.  *See* 28 U.S.C. § 1446(b).

4.      This Notice is filed in the proper division because the Court embraces the Superior Court of the State of California, in and for the County of Monterey, where Plaintiff's action is pending.  *See* 28 U.S.C. §§ 1441 and 1446(a).

---

[1] Carrington Foreclosure Services, LLC is now known as Vylla Solutions, LLC, and the name was changed in its LLC registrations.  Plaintiffs were aware of the name change due to the prior litigation and erroneously named Vylla Solutions, LLC as Carrington Foreclosure Services, LLC in this Complaint.

Holland & Knight LLP
560 Mission Street, Suite 1900
San Francisco, CA 94105
Tel: 415.743.6900
Fax: 415.743.6910

5.　No previous request has been made for the relief requested herein. Pursuant to 28 U.S.C. § 1446(d), a copy of this Notice of Removal is being served on Plaintiff, and a copy is being filed with the State Court Clerk.

6.　There are no other identified defendants in this matter.

7.　Pursuant to 28 U.S.C. § 1446(d), a copy of this Notice of Removal is being served on Plaintiff, and a copy is being filed with the State Court Clerk.

**B.　Removal Is Proper Because the Court Has Diversity Jurisdiction.**

8.　Under 28 U.S.C. § 1332, United States District Courts are vested with jurisdiction to consider cases or controversies where there is diversity jurisdiction and the amount in controversy exceeds $75,000.00.

9.　Removal of such cases is governed by 28 U.S.C. § 1332(a). Section 1332(a) makes clear that "district courts *shall* have original jurisdiction of all civil actions where the matter in controversy exceeds the sum of $75,000.00, exclusive of interest and costs, and is between – (1) citizens of different States;"

10.　Here, Plaintiffs seek to extinguish the debt against the property, the principal balance of which exceeds $600,000.00, thus meeting the threshold requirement of §1332(a).

11.　Plaintiffs are residents of the State of California.

12.　Defendant Carrington Mortgage Services, LLC is a Delaware limited liability company.　Carrington Mortgage Services, LLC's members are Carrington Holding Company, LLC and Carrington Investment Partners, L.P.　Carrington Holding Company, LLC is a Delaware limited liability company, whose sole member is The Carrington Companies, LLC.　Carrington Investment Partners, L.P. is a Delaware limited partnership, whose general partner is Carrington Capital Management, LLC, and whose limited partners are CIP Intermediate, LLC, a Delaware limited liability company, and Carrington Holding Company, LLC.　Carrington Holding Company, LLC is the sole member of CIP Intermediate, LLC.　Carrington Capital Management, LLC is a Delaware limited liability company, whose members are Carrington Holding

Company, LLC and a natural person. The natural person is not a citizen of the State of California, but is a citizen of the State of Tennessee. The Carrington Companies, LLC is a Delaware limited liability company, whose members are two natural persons who are not citizens of the State of California, but are citizens of the States of Tennessee and Wyoming.

13. Carrington Foreclosure Services, LLC, now known as Vylla Solutions, LLC is a Delaware limited liability company whose sole member is Real Estate Logistics, LLC. Real Estate Logistics LLC is a Delaware limited liability company, whose members are Carrington Holding Company, LLC, and a natural person. The natural person is a not a citizen of the State of California, but is a citizen of the State of Tennessee. Carrington Holding Company, LLC is a Delaware limited liability company, whose sole member is The Carrington Companies, LLC. The Carrington Companies, LLC is a Delaware limited liability company, whose members are two natural persons who are not citizens of the State of California, but are citizens of the States of Tennessee and Wyoming.

14. In accordance with 28 U.S.C. § 1446(d), the undersigned counsel certifies that a copy of this Notice of Removal and all supporting papers will be promptly served on Plaintiff, and filed with the Clerk for the Superior court of the State of California in and for the County of Monterey.

**WHEREFORE**, CMS and Vylla, by counsel, respectfully request that the above-referenced action, originally filed in the Superior Court of the State of California for the County of Monterey, be removed to this Court pursuant to 28 U.S.C. §§ 1332, 1441 and 1446.

Holland & Knight LLP
560 Mission Street, Suite 1900
San Francisco, CA 94105
Tel: 415.743.6900
Fax: 415.743.6910

1    Dated:  April 14, 2025                    HOLLAND & KNIGHT LLP

2

3                                              By: _/s/Ana Dragojevic_____
                                                   Ana Dragojevic

4                                              Attorneys for Defendants
                                               Carrington Mortgage Services, LLC and
5                                              Carrington Foreclosure Services, LLC n/k/a
                                               Vylla Solutions, LLC
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT A

# SUMMONS
## *(CITACION JUDICIAL)*

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

CARRINGTON FORECLOSURE SERVICES, LLC, CARRINGTON
MORTGAGE SERVICES, LLC   DOES 1 THROUGH 15
INCLUSIVE

FILED

MAR 10 2025

CLERK OF THE SUPERIOR COURT
AGNES NAZARIAN _____ DEPUTY

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

WILLIAM BLACKWELL AND LORETTA BLACKWELL

---

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

---

The name and address of the court is:
*(El nombre y dirección de la corte es):* Monterey Courthouse

Superior Court of the State of California County of MONTEREY

1200 Aguajito Road, Monterey, California 93940

CASE NUMBER:
*(Número del Caso):*
25CV001278

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
William Blackwell and Loretta Blackwell   1914 Whitman Street Salinas, CA 93906

| DATE: MAR 10 2025 *(Fecha)* | Clerk, by *(Secretario)* AGNES NAZARIAN | , Deputy *(Adjunto)* |
| --- | --- | --- |

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☒ on behalf of *(specify):* Carrington Mortgage Services, LLC

under: ☐ CCP 416.10 (corporation)      ☐ CCP 416.60 (minor)
☐ CCP 416.20 (defunct corporation)   ☐ CCP 416.70 (conservatee)
☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
☒ other *(specify):* Corporations Code: 17701.16
4. ☐ by personal delivery on *(date):*

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov

# SUMMONS
## *(CITACION JUDICIAL)*

**FOR COURT USE ONLY**
*(SOLO PARA USO DE LA CORTE)*

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

CARRINGTON FORECLOSURE SERVICES, LLC, CARRINGTON
MORTGAGE SERVICES, LLC   DOES 1 THROUGH 15
INCLUSIVE

FILED

MAR 10 2025

CLERK OF THE SUPERIOR COURT
AGNES NAZARIAN DEPUTY

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

WILLIAM BLACKWELL AND LORETTA BLACKWELL

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):* Monterey Courthouse

CASE NUMBER:
*(Número del Caso):* 25CV001278

Superior Court of the State of California County of MONTEREY

1200 Aguajito Road, Monterey, California 93940

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
William Blackwell and Loretta Blackwell   1914 Whitman Street Salinas, CA 93906

| DATE:<br>*(Fecha)* | MAR 10 2025 | Clerk, by<br>*(Secretario)* | AGNES NAZARIAN | , Deputy<br>*(Adjunto)* |

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☒ on behalf of *(specify):* Carrington Foreclosure Services, LLC

under: ☐ CCP 416.10 (corporation)   ☐ CCP 416.60 (minor)
☐ CCP 416.20 (defunct corporation)   ☐ CCP 416.70 (conservatee)
☐ CCP 416.40 (association or partnership)   ☐ CCP 416.90 (authorized person)

☒ other *(specify):* Corporations Code: 17701.16
4. ☐ by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
*www.courtinfo.ca.gov*

1 WILLIAM BLACKWELL
2 LORETTA BLACKWELL
  1914 WHITMAN STREET
3 SALINAS, CA 93906

4
  PLAINTIFFS IN PRO PER
5

6
7 SUPERIOR COURT OF THE STATE OF CALIFORNIA
  IN AND FOR THE COUNTY OF MONTEREY
8

9
                                              )
10 WILLIAM BLACKWELL, and                     )   Case No.:
   LORETTA BLACKWELL,                         )   _____
11                                            )
                                              )   COMPLAINT FOR:
12              Plaintiffs,                    )
                                              )
13                                            )   1.  CONSTRUCTIVE FRAUD
   vs.                                        )   2.  DEFAMATION
14                                            )   3.  VIOLATION OF CALIFORNIA
                                              )       CIVIL CODE § 2924.12 and §
15                                            )       2924.17(a) (b
                                              )   4.  VIOLATION OF CALIFORNIA
16                                            )       B&P CODE § 17200 ET SEQ
                                              )   5.  VIOLATIONS OF CALIFORNIA
17 CARRINGTON FORECLOSURE                     )       HOMEOWNERS BILL OF RIGHTS
   SERVICES, LLC; CARRINGTON                  )   6.  CANCELLATION OF WRITTEN
18 MORTGAGE SERVICES, LLC, and DOES 1         )       INSTRUMENTS
   THROUGH 15 INCLUSIVE,                      )   7.  DECLARATORY RELIEF
19                                            )   8.  SLANDER OF TITLE
                                              )
20              Defendants.                   )
                                              )
21                                            )
                                              )
22                                            )
                                              )
23                                            )
                                              )
24                                            )
                                              )
25                                            )
                                              )
26                                            )
                                              )
27 _____           )

28

Plaintiffs, WILLIAM BLACKWELL and LORETTA BLACKWELL, ("Plaintiffs"), allege as follows:

I.
JURISDICTION AND VENUE

8. The transactions and events which are the subject matter of this Complaint all occurred within the County of MONTEREY, State of California and the amount in controversy exceeds $35,000.00.

9. This action is filed under California law, and venue is appropriate in this judicial district according to California statutes. Civ. Proc. Code §395. Defendants' obligation and liability arise in this County and conduct business in the State of California.

II.
THE PARTIES

10. Plaintiffs, WILLIAM BLACKWELL and LORETTA BLACKWELL, ("Plaintiffs"), are now, and at all times relevant to this action, residents of the County of MONTEREY, State of California. Plaintiffs are the rightful owners of the real property commonly describe as: 1914 Whitman Street, Salinas, CA 93906, ("the subject property").

11. Plaintiffs are informed and believe and thereon allege that at all relevant times mentioned in this Complaint, Defendant, CARRINGTON MORTGAGE SERVICES, LLC, is organized, and existing under the laws of the State of Delaware and at all times pertinent, was conducting business in the County of MONTEREY, State of California. Defendant, claimed to be the Servicer and /Lender. Prior to recording the Notice of Default, Defendant failed to contact Plaintiffs in person or by telephone to explore the option of avoiding foreclosure as mandated by the due diligence requirement of the California Homeowner Bill of Rights.

12. Defendant, CARRINGTON FORECLOSURE SERVICES, LLC., is organized and existing under the laws of the State of Delaware, and at all relevant times herein, was conducting business in the County of MONTEREY, State of California and is the purported an agent and well-known representative of the master Servicer and /Lender. Prior to recording the Notice of Default, Defendant failed to contact Plaintiffs in person or by telephone to explore the option of avoiding foreclosure as mandated by the due diligence requirement of the California Homeowner Bill of Rights.

13. Plaintiffs do not know the true names, capacities, or basis for liability of Defendants sued herein as Does 1 through 15, inclusive, as each fictitiously named Defendant is in some manner liable to Plaintiffs, or claims some right, title, or interest in the Property. Plaintiffs will amend this Complaint to allege their true names and capacities when ascertained. Plaintiffs are informed and believe, and therefore allege, that at all relevant times mentioned in this Complaint, each of the fictitiously named Defendants are responsible in some manner for the injuries and damages to Plaintiffs so alleged and that such injuries and damages were proximately caused by such Defendants, and each of them.

III.
FACTUAL AND GENERAL ALLEGATIONS

14. Plaintiffs allege that, prior to CARRINGTON MORTGAGE SERVICES, LLC, and CARRINGTON FORECLOSURE SERVICES, LLC recording the Notice of Default, neither the Loan Servicer nor the Lender contacted Plaintiffs in person or by telephone to discuss option of avoiding foreclosure as required by the California Homeowner Bill of Rights.

15. On or about January 09, 2006, (hereinafter referred to as "Closing Date"), Plaintiffs WILLIAM BLACKWELL and LORETTA BLACKWELL entered into a consumer credit transaction with, AMERICA'S WHOLESALE LENDER., by obtaining a Four Hundred Forty

Five Thousand (US$445,000.00) mortgage loan secured by the DEED OF TRUST of Plaintiffs' real property commonly described as: 1914 Whitman Street, Salinas, CA 93906.   The true and correct copy of the Deed of Trust is attached hereto as Plaintiffs' **Exhibit "A"** and incorporated herein by reference as if set forth in full herein.

16.  Plaintiffs performed all terms, covenants, and conditions required of them under the mortgage, except for those terms, covenants, and conditions the performance of which was either waived or rendered impossible by AMERICA'S WHOLESALE LENDER.

17. Plaintiffs further allege that, neither of the above-named Defendants is a third party beneficiary under Plaintiffs' Note and Deed of Trust nor do they have lawful Assignment of Plaintiffs' Note and Deed of Trust.  As such, Defendants and each of them lack standing to encumber Plaintiffs' real property or cause the non-judicial foreclosure of Plaintiffs' real property.

18.   Plaintiffs are informed and believes, and thereon alleges, that at all times herein mentioned, each of the Defendants were the agents, employees, servants and/or the joint-venturers of the remaining Defendants, and each of them, and in doing the things alleged herein below, were acting within the course and scope of such agency, employment and/or joint venture and enterprise in intrastate and interstate commerce.

19. On or about 08/21/2012, without notice to Plaintiffs, Mortgage electronic Registration Systems, Inc., ***engaged the service of  robo signer*** to unlawfully record the  Assignment of Deed of Trust, and thereby, transferring and conveying all beneficial interest under Plaintiffs' Note and Deed of Trust to The Bank of New York Mellon fka The Bank of New York Mellon, as Trustee for the Certificate holders of the CWABS, INC, Asset-Backed Certificates, Series 2006-5. The true and correct copy of the "Assignment of Deed of Trust" is attached hereto as Plaintiffs' **Exhibit "B"** and incorporated herein by reference as if set forth in full herein.   Plaintiffs allege, that the Assignment of Deed of Trust is void and has no force and effect.   Plaintiffs allege that,

4

Mortgage electronic Registration Systems, Inc is not the holder of Plaintiffs' Note in due course and has no legal authority to transfer or convey Plaintiffs' interest in the deed of trust to The Bank of New York Mellon fka The Bank of New York Mellon, as Trustee for the Certificate holders of the CWABS, INC, Asset-Backed Certificates, Series 2006-5.

20. Plaintiffs allege that, any applicable statutes of limitations have been tolled by the Defendants' continuing, fraud, knowing, and active concealment of the facts alleged herein. Despite exercising reasonable diligence, Plaintiffs could not have discovered, and did not discover, and was prevented from discovering, the wrongdoing complained of herein.

21. On or about 01/15/2016, Plaintiffs executed a loan modification agreement with Bank of America.  Plaintiffs' **Exhibit "C"**

22. On or about 5/24/22  Carrington Mortgage Services, LLC unlawfully claimed that it was the owner of Plaintiff's Note and Mortgage and thereafter orchestrated fraudulent loan modification under Plaintiffs' Note and deed of trust.  Plaintiffs' **Exhibit "H"**

23. On or about 4/11/24  Carrington Mortgage Services, LLC  induced Plaintiff to enter into loan modification agreement. Plaintiffs' **Exhibit "E"**

24. On or about 4/30/2024, without notice to Plaintiffs, Defendant, Carrington Mortgage Services, LLC, unlawfully substituted  CARRINGTON FORECLOSURE SERVICES, LLC, as trustee under the deed of trust executed by Plaintiffs.   The true and correct copy of the "SUBSTITUTION OF TRUSTEE" is attached hereto as Plaintiffs' **Exhibit "D"** and incorporated herein by reference as if set forth in full herein.   Plaintiffs allege that the substitution of trustee is void and has no force and effect.   Plaintiffs allege that  CARRINGTON FORECLOSURE SERVICES, LLC, is not a duly appointed trustee.

25. Subsequently, Carrington Mortgage Services, LLC   executed CMS Trial period plan.  Plaintiffs' **Exhibit "F"**

5

26. On or about 4/30/2024, Defendant CARRINGTON FORECLOSURE SERVICES, LLC unlawfully recorded the "NOTICE OF DEFAULT AND ELECTION TO SELL UNDER THE DEED OF TRUST" of Plaintiffs' real property in the Official Records of the County of MONTEREY Recorder's office. The true and correct copy of the "NOTICE OF DEFAULT AND ELECTION TO SELL UNDER THE DEED OF TRUST" is attached hereto as **Exhibit "G"** and incorporated herein by reference as if set forth in full hereto. Plaintiffs are informed and believe, and thereon further allege that, the notice of default is false because it fails to accurately depict the amount of Plaintiffs' indebtedness if any.

27. Plaintiffs further allege that, the Notice of Default is void because, prior to CARRINGTON FORECLOSURE SERVICES, LLC, recording the Notice of Default, neither the Loan Servicer nor the Lender contacted Plaintiffs in person or by telephone to discuss option of avoiding foreclosure as required by the California Homeowner Bill of Rights.

28. Plaintiffs seek redress from Defendants identified herein for damages, for other injunctive relief, and for cancellation of written instruments based upon: violating California Homeowner Bill of Rights and incomplete and ineffectual perfection of a security interest in Plaintiffs' Home.

29. Plaintiffs allege that an actual controversy has arisen and now exists between the Plaintiffs and Defendants, and each of them. Plaintiffs desire a judicial determination and declaration of its rights with regard to the Property and the corresponding Promissory Note and Deed of Trust.

30. Plaintiffs are informed and believe, and thereon allege, that the purchase mortgage on the Property, the debt or obligation evidenced by the Note and the Deed of Trust executed by Plaintiffs in favor of the original lender was not properly assigned and/or transferred to Defendants operating the pooled mortgage funds.

31. Plaintiffs allege that as of the date of the filing of this Complaint, the Deed of Trust had not been legally assigned to any other party or entity.

32. Plaintiffs are informed and believe, and thereon allege that at all times herein mentioned, and any assignment of a Deed of Trust without proper transfer of the obligation that it secures, is a legal nullity.

33. Plaintiffs are informed and believes, and thereon alleges, that the Mortgage Originator (i.e., the original lender herein) agreed to transfer and endorse to the Trustee for the Securitized Trust, without recourse, including all intervening transfers and assignments, all of its right, title and interest in and to the mortgage loan (Note) of Plaintiffs' herein and all other mortgage loans.

34. Plaintiffs allege that the Defendant Trustees are estopped and precluded from asserting any secured or unsecured claim in this case.

35. Plaintiffs are further informed and believes, and thereon alleges, that as a result of the PSA and other documents signed under oath in relation thereto, the Mortgage Originator, sponsor and Depositor are estopped from claiming any interest in the Note that is allegedly secured by the Deed of Trust on Plaintiff's Home herein.

36. Through this action, Plaintiffs seek damages against Defendants, Carrington Mortgage Services, LLC, and Carrington Foreclosure Services, LLC, arising from the unlawful and wrongful encumbrance of Plaintiffs' real property. Additionally, Plaintiffs seek treble damages for Defendants' willful violation of the California Homeowner Bill of Rights.

////

////

////

FIRST CAUSE OF ACTION

(CONSTRUCTIVE FRAUD)

(AGAINST ALL DEFENDANTS)

37.  Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

38.  Ordinarily, failure to disclose material facts is not actionable fraud unless there is some fiduciary relationship giving rise to a duty to disclose . . . [however,] '[t]he duty to disclose may arise without any confidential relationship where the defendant alone has knowledge of material facts which are not accessible to the plaintiff.' " (*Magpali v. Farmers Group, Inc.* (1996) 48 Cal.App.4th 471, 482 [55 Cal.Rptr.2d 235], internal citations omitted.)

39. Plaintiffs allege that Defendant, Carrington Mortgage Services, LLC and CARRINGTON FORECLOSURE SERVICES, LLC had a duty to disclose Plaintiff and to the public that, the real estate documents filed and / or caused to be filed by Defendants concerning Plaintiff's home were false and/ or fraudulent and that the resulting assignments and substitution of trustee were void as a matter of law.

40. Plaintiffs allege that, and at all times herein mention Defendants, knew that Plaintiff is the rightful owner of the subject property.

41. Further, Plaintiffs allege that, CARRINGTON MORTGAGE SERVICES, LLC and CARRINGTON FORECLOSURE SERVICES, LLC defrauded Plaintiffs by not properly crediting payments and wrongfully foreclosing on the property despite knowing the non-payment claims were false.

54.     The Foreclosing Defendants had actual knowledge that the Plaintiff's account was not accurate but that the Foreclosing Defendants could use the inaccuracy to foreclose on the Subject Property which had substantial equity, to recover its excessive fees, charges and interest.

Plaintiffs made such payments and provided proof of the payments based on the improper, inaccurate, and fraudulent representations as to their account. The Foreclosing Defendants also utilized amounts known to the Defendants to be inaccurate to determine the amount allegedly due and owing for purposes of foreclosure.

55. Additionally, the Foreclosing Defendants concealed material facts known to them but not to Plaintiff regarding payments, notices, assignments, transfers, late fees and charges with the intent to defraud Plaintiff.

56. The Foreclosing Defendants made the above-referenced false representations, concealments and non-disclosures with knowledge of the misrepresentations, intending to induce Plaintiff's reliance, which the unsuspecting Plaintiffs justifiably relied upon, resulting in damage to their credit standing, costs and loss of their property. Plaintiffs were unaware of the true facts. Had Plaintiffs known the true facts, Plaintiffs, among other things, would not have maintained the Foreclosing Defendants as their lender, servicer and trustee (and their alleged agents) and/or would have taken legal action immediately to save his real property.

57. As a direct and proximate result of the misrepresentations and concealment Plaintiff has been damaged in an amount to be proven at trial, including but not limited to costs of Loan, damage to Plaintiff's financial security, and emotional distress.

58. Plaintiffs allege that Defendants are liable for malice, fraud and/or oppression. Defendants' actions were malicious and done willfully in conscious disregard of the rights of Plaintiffs in that Defendants' actions were calculated to injure Plaintiff. As such Plaintiff is entitled to recover, in addition to actual damages, punitive damages to punish Defendants and to deter them from engaging in future misconduct.

59. As a result of the Foreclosing Defendants' fraudulent conduct, Plaintiffs has suffered

compensatory, general and special damages in an amount to proof. Additionally, the Foreclosing

Defendants acted with malice, fraud and/or oppression and, thus, Plaintiffs are entitled to an award

of punitive damages.


SECOND CAUSE OF ACTION

(DEFAMATION)

(AGAINST ALL DEFENDANTS)

60. Plaintiffs re-allege and incorporates by reference all preceding paragraphs

as though fully set forth herein.

61. Defamation is an invasion of the interest in reputation. It may be libel or slander.

(California Civil section 44; herein, "Civ. Code § __.") The tort involves (a) a publication that is

(b) false, (c) defamatory, and (d) unprivileged, and that (e) has a natural tendency to injure or that

causes special damage. Civ. Code §§ 45, 46; see *Smith v. Maldonado* (1999) 72 Cal.App.4th 637,

645; *Seelig v. Infinity Broadcasting Corp.* (2002) 97 Cal.App.4th 798, 809.

62. Plaintiffs allege that, on or about 2/4/2022, and subsequent thereafter, Defendants,

CARRINGTON MORTGAGE SERVICES, LLC and  CARRINGTON FORECLOSURE

SERVICES, LLC published or cause to be published, false or derogatory information of and

concerning Plaintiffs with the Credit bureau or credit agencies as well as in the Monterey County

recorder's Office.

63. Plaintiffs allege that CARRINGTON MORTGAGE SERVICES, LLC and

CARRINGTON FORECLOSURE SERVICES, LLC  communicated to third parties that Plaintiffs

were indebted to Defendants when Defendants knew that to be false.

64. Plaintiffs allege that Defendants' false or derogatory communication of and concerning the

Plaintiffs to Third parties were unprivileged, and has a natural tendency causes Plaintiffs

substantial injuries subject to proof at jury trial.

10

# THIRD CAUSE OF ACTION

(VIOLATION OF CALIFORNIA CIVIL CODE § 2924.12 and § 2924.17(a) (b))

(AGAINST ALL DEFENDANTS)

65.  Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

66.  Plaintiffs allege that California Civil Code § 2924.12 authorizes actions to enjoin foreclosures, or for damages after foreclosure, for breaches of §§ 2923.55 or 2924.17. This right of private action is "in addition to and independent of any other rights, remedies, or procedures under any other law. Nothing in this section shall be construed to alter, limit, or negate any other rights, remedies, or procedures provided by law." Civil Code § 2924.12(h). Any Notice of Default, or Substitution of Trustee recorded on Plaintiffs' real property based upon a fraudulent and forged Deed of Trust shall be considered a "Material Violation", thus triggering the injunctive relief provisions of Civil Code § 2924.12 & § 2924.17(a) (b).

67. Plaintiffs allege that Defendants are liable to Plaintiffs because Defendants, CARRINGTON MORTGAGE SERVICES, LLC and  CARRINGTON FORECLOSURE SERVICES, LLC, has been guilty of oppression, fraud, or malice when Defendants recorded the Substituted of Trustee, Assignment of Deed of Trust, Notice of Default and Notice of Trustee's Sale in the commencement of the unlawful, fraudulent and willful oppressive non-judicial foreclosure of Plaintiffs' real property.

68.  Plaintiffs allege that, CARRINGTON MORTGAGE SERVICES, LLC and CARRINGTON FORECLOSURE SERVICES, LLC intentionally, with oppression, fraud, or malice misrepresented that they have beneficial interest in the Plaintiffs' Notes that secured the Deed of Trust of Plaintiff's real property.

11

69.     Defendants, CARRINGTON MORTGAGE SERVICES, LLC and  CARRINGTON FORECLOSURE SERVICES, LLC, willfully misrepresented that they had they the holder of Plaintiffs' note in due course and that they had the right to foreclose on Plaintiffs' real property. As a direct and proximate result of the misrepresentations and concealment Plaintiff was damaged in an amount to be proven at trial, including but not limited to costs of Loan, damage to Plaintiff's financial security, emotional distress, and Plaintiff have incurred costs and attorney's fees.

70.     Defendants are liable of malice, fraud and/or oppression.  Defendants' actions were malicious and done willfully in conscious disregard of the rights and safety of Plaintiff in that the actions were calculated to injure Plaintiff.   As such Plaintiff is entitled to recover, in addition to actual damages, punitive damages to punish Defendants and to deter them from engaging in future misconduct.

FOURTH CAUSE OF ACTION

(VIOLATION OF CALIFORNIA B&P CODE § 17200 ET SEQ)

(Against all Defendants)

71.   Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

72. Plaintiffs are informed and believes and thereon alleges that beginning as early as 2006, and continuing to the present time, Defendants, CARRINGTON MORTGAGE SERVICES, LLC and  CARRINGTON FORECLOSURE SERVICES, LLC, are liable for acts of unfair competition as defined by Business and Professions Code §17200, by engaging in the acts as described above; namely, Defendants' policies and practices described above violate all the statutes as previously listed and California Civil Code §1709, and consequently constitute unlawful business acts or practices within the meaning of Business and Professions Code §17200.

73. In determining whether a business act or practice is unfair, the court weighs the

utility of the conduct of Lender and Trustee against the gravity of the harm to the Plaintiff. Trustee and Lender misled Plaintiff and the Department of Corporations by representing to them that there is a loan modification program available to those, like Plaintiff, whose homes are in danger of foreclosure. Trustee and Lender also misled Plaintiff by representing to them that the foreclosure process would be delayed during the loan modification process.

74. The actions of Defendants, and each of them, in filing the fraudulently Deceptive Notice of Default and without complying with Civil Code Sections 2932.5, 2924, 2923.5 and 2923.6 have misled Plaintiff and similarly situated persons into believing their mortgage is in default and that actual applying for or continuing with the modification process would prevent the foreclosure proceedings. This was done intentionally unfairly and, misleading, and fraudulent. Trustee had no right to file a Notice of Default until complete compliance with Civil Code Section 2932.5, 2923.5, 2923.6 and 2924.

75. Trustee and Lender had no right to try to sell the Subject Property while there was a tainted, fraudulent Notice of Default. The harm to Plaintiff and to members of the general public outweighs the utility of the policy and practices of Trustee and Lender consequently constitute an unlawful business act of practice within the meaning of Business and Professions Code §17200.

76. Further, the foregoing conduct threatens an incipient violation of a consumer law, including or violates the policy or spirit of such law or otherwise significantly threatens or harms competition. Trustee's practices described above are likely to mislead the general public, and therefore, constitute a fraudulent business act of practice within the meaning of Business and Professions Code §17200. The unfair, unlawful, and fraudulent business practices and false and misleading advertising of Trustee and Lender present a continuing threat to members of public in that other consumers will be defrauded into closing on similar fraudulent loans. Plaintiff and other members of the general public have no other adequate remedy of law.

77. The misrepresentations by Trustee and Lender consisted of failure to disclose and to investigate as described above with intent to induce Plaintiff to obligate themselves on the Loan in reliance on the integrity of Lender.

78. As an unsophisticated customer, Plaintiffs could not have discovered the true nature of the material facts on their own.

79. The accuracy of the representations of Trustee and Lender is important in enabling consumers such as Plaintiff to compare market lenders in order to make informed decisions regarding lending transactions such as a loan described herein.

80. Plaintiffs' reliance on Trustee and Lender was a substantial factor in causing the harm Plaintiffs suffered.

81. Trustee and Lender conspired and agreed to commit the above-mentioned fraud.

82. As a proximate result of the fraud and non-compliance with state foreclosure laws and the terms of the Deed of Trust by Trustee and Lender Trustee dispossessed Plaintiffs and took Plaintiff's home in a foreclosure sale and caused Plaintiff to suffer injury to credit standing in an amount to be determined at trial.

83. The conduct of Trustee and Lender was fraudulent within the meaning of California Civil Code §3294(c)(3), and by virtue thereof Plaintiffs are entitled to an award of punitive damages in an amount sufficient to punish and make an example of Trustee and Lender.

84. Plaintiffs are unsophisticated customer whose reliance upon Lender and Trustee was reasonable and consistent with the intent of the Legislature, the purpose of California Civil Code §1572, enacted in 1872 and designed to assist and protect consumers similarly situated with Plaintiff in this action.

85. Plaintiffs allege that as a result Defendants' [supra] violations of *California*

14

*Business & Professions Code* section 17200, Plaintiff has been damaged in the following ways: (1) multiple parties may seek to enforce his debt obligation against Plaintiff; (2) the title to Plaintiff's real property has been clouded and its salability has been rendered unmarketable, as any buyer of Plaintiff's home will find themselves in legal limbo, unable to know whether they can safely buy Plaintiff's home or get title insurance; (3) Plaintiff is unable to determine whether the monthly mortgage payments has been sent to the right party; (4) Plaintiff's credit and credit score have been damaged; and (5) Plaintiff has expended significant funds to cover the cost of this litigation.

86. As a result of the aforementioned acts. Plaintiff has lost money or property and suffered injury in fact. Lender received and continues to hold the money of Plaintiff and other members of the public who have fallen victim to the schemes of Lender and Trustee.

FIFTH CAUSE OF ACTION

(VIOLATIONS OF CALIFORNIA HOMEOWNERS BILL OF RIGHTS)

(Against All Defendants)

87.    Plaintiffs re-allege and incorporates by reference all preceding paragraphs as though fully set forth herein.

88.  Plaintiff alleges that CARRINGTON MORTGAGE SERVICES, LLC and  CARRINGTON FORECLOSURE SERVICES, LLC, though acting solely has nominee, is that agent of the lender/servicer and had a fiduciary duty to Plaintiffs and a duty not to defraud the Plaintiffs and a duty to contact Plaintiffs in person prior to the recording of the Notice of Default as mandated by the California Homeowner Bill of Rights and California Civil Code 2923.5.

89.     Plaintiffs allege that, prior to the recording of the Notice of Default, CARRINGTON FORECLOSURE SERVICES, LLC failed to contact Plaintiffs in person or by telephone as mandated by the California homeowner Bill of Rights.

90.     Plaintiffs allege that, CARRINGTON MORTGAGE SERVICES, LLC and CARRINGTON FORECLOSURE SERVICES, LLC, alleged agents of the Master Servicers and Lender and the remaining Defendants, (hereinafter "the foreclosing Defendants"), and each of them failed to comply with the express requirements of the Pre-Notice of Default Outreach Requirements mandated by the California Homeowners Bill of Rights.

91.   The California Homeowner Bill of Rights provide in pertinent part that, a servicer may not record a notice of default (NOD) until 30 days after contacting, or diligently attempting to contact, the borrower to discuss alternatives to foreclosure.

92.   Plaintiffs allege that prior to filing the Notice of Default and prior to instituting the non-judicial foreclosure of Plaintiffs' real property, neither MERS as the agent of lender nor the remaining foreclosing defendants contact Plaintiffs to discuss alternatives to foreclosure.

93.   The California Homeowner Bill of Rights provide in pertinent part that, a servicer may not record a notice of default (NOD) until 30 days after contacting, or diligently attempting to contact, the borrower to discuss alternatives to foreclosure.

94.   Plaintiff alleges that the servicer and the foreclosing Defendants did not exercise due Diligence in attempt to contact Plaintiff as required under the California Homeowner Bill of Rights which sets conditions prior to commencement of non-judicial foreclosure in California.

95.   On information and believe, Plaintiffs allege that there is no Statute of Limitation impediment to their cause of action for violation of California Homeowner Bill of Rights because Borrowers will have authority to seek redress of "material" violations of the new foreclosure

process protections. Injunctive relief will be available prior to a foreclosure sale and recovery of damages will be available following a sale. (AB 278, SB 900):

### California Homeowner Bill of Rights

96. The California Homeowner Bill of Rights became law on January 1, 2013 to ensure fair lending and borrowing practices for California homeowners. The laws are designed to guarantee basic fairness and transparency for homeowners in the foreclosure process. Key provisions include:

- **Restriction on dual track foreclosure:** Mortgage servicers are restricted from advancing the foreclosure process if the homeowner is working on securing a loan modification. When a homeowner completes an application for a loan modification, the foreclosure process is essentially paused until the complete application has been fully reviewed.

- **Guaranteed single point of contact:** Homeowners are guaranteed a single point of contact as they navigate the system and try to keep their homes – a person or team at the bank who knows the facts of their case, has their paperwork and can get them a decision about their application for a loan modification.

- **Verification of documents:** Lenders that record and file multiple unverified documents will be subject to a civil penalty of up to $7,500 per loan in an action brought by a civil prosecutor. Lenders who are in violation are also subject to enforcement by licensing agencies, including the Department of Business Oversight, the Bureau of Real Estate.

- **Enforceability:** Borrowers will have authority to seek redress of "material" violations of the new foreclosure process protections. Injunctive relief will be available prior to a foreclosure sale and recovery of damages will be available following a sale. (AB 278, SB 900)

- **Tools to prosecute mortgage fraud:** The statute of limitations to prosecute mortgage-related crimes is extended from one to three years, allowing the Attorney General's office to investigate and prosecute complex mortgage fraud crimes. In addition, the Attorney General's office can use a statewide grand jury to investigate and indict the perpetrators of financial crimes involving victims in multiple counties.
(AB 1950, SB 1474)

97. Plaintiffs contend that, any trustee's deed upon sale which has already been recorded is a material violation that has not been corrected.

98.  Plaintiffs contend that, Civil Code § 2924.12 authorizes actions to enjoin foreclosures, or

17

for damages after foreclosure, for breaches of §§ 2923.55 or 2924.17. This right of private action is "in addition to and independent of any other rights, remedies, or procedures under any other law. Nothing in this section shall be construed to alter, limit, or negate any other rights, remedies, or procedures provided by law." Civil Code § 2924.12(h). Any Notice of Default, or Substitution of Trustee recorded on Plaintiffs' real property based upon a fraudulent and forged Deed of Trust shall be considered a "Material Violation", thus triggering the injunctive relief provisions of Civil Code § 2924.12 & § 2924.17(a) (b).

99. Plaintiffs allege that the servicer and the foreclosing Defendants did not exercise due diligence to contact Plaintiffs as required under the California Homeowner Bill of Rights.

100. Plaintiffs contend that During the 30 days period prior to Foreclosing Defendants, filing a Notice of Default, Plaintiffs was never contacted in person or by telephone in order to assess his financial situation or to explore options to avoid foreclosure and consider or offer a possible permanent loan modification as mandated by the express requirements of the Pre-Notice of Default Outreach under the California Homeowners Bill of Rights.

101. As a direct and proximate result of the Servicer and the Foreclosing Defendants' failure to comply with the express requirement of the California Homeowners Bill of Rights, Plaintiffs have suffered general and special damages in an amount to be determined at jury trial.

102. As a direct and proximate result of the Servicer and the Foreclosing Defendants' failure to comply with the express requirement of the California Homeowners Bill of Rights, Plaintiff is entitled to treble damages against the foreclosing Defendants and each of them.

////

////

e

## SIXTH CAUSE OF ACTION

(CANCELLATION OF WRITTEN INSTRUMENTS SOT, NOD, )

(Against all Defendants)

102.  Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

103.  If the wrongfully recorded substitution of trustee (SOT), Notice of Default (NOD), and Notice of trustee's sale (NTS) instruments are left outstanding, Plaintiff will continue to suffer loss and damages. The plaintiffs hereby request the cancellation of the aforementioned recorded instruments.      Plaintiffs allege that CARRINGTON MORTGAGE SERVICES, LLC and CARRINGTON FORECLOSURE SERVICES, LLC, along with DOES 1 through 15, caused the preparation and recording of the above documents without a factual or legal basis.

104.  On information and belief, these acts by Defendants constitute fraud, oppression and malice under Cal. Civil Code §3294.  The defendants demonstrated conscious disregard for the legal requirements necessary to conduct a non-judicial foreclosure sale under California law. Civil Code 2924 et seq., knowing they had taken a calculated risk that Plaintiff would not contest.

105.  By virtue of Defendants' willful and wrongful conduct as herein alleged above, Plaintiff is entitled to general and special damages according to proof at trial, but not less than $1,899, 567. 15 as well as punitive and exemplary damages as determined by this Court.

## SEVENTH CAUSE OF ACTION

(DECLARATORY RELIEF)

(Against all Defendants)

Type text herdfgfgffe

106.  Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

19

107. An actual controversy has arisen and now exists between Plaintiffs and Defendants concerning their respective rights and duties regarding the Note and Trust Deed.

108. Plaintiffs contend that pursuant to the Loans, Defendants do not have authority to foreclose upon and sell the Property.

109. Plaintiffs are informed and believes and upon that basis alleges that Defendants dispute Plaintiffs' contention and instead contend they may properly foreclose upon the Property.

110. Plaintiffs therefore request a judicial determination of the rights, obligations and interest of the parties with regard to the Property, and such determination is necessary and appropriate at this time under the circumstances so that all parties may ascertain and know their rights, obligations and interests with regard to the Property.

111. Plaintiffs request a determination of the validity of the Trust Deeds as of the date the Notes were assigned without a concurrent assignation of the underlying Trust Deeds.

112. Plaintiffs request a determination of the validity of the NOD (Notice of Default).

113. Plaintiffs request a determination of whether any Defendants have authority to foreclose on the Property.

114. Plaintiffs request all adverse claims to the real property must be determined by a decree of this court.

115. Plaintiffs request the decree declare and adjudge that plaintiff is entitled to the exclusive possession of the property.

116. Plaintiffs request the decree declare and adjudge that plaintiffs owns in fee simple, and is entitled to the quiet and peaceful possession of, the above-described real property.

117. Plaintiffs request the decree declare and adjudge that defendants and each of them, and all persons claiming under them, have no estate, right, title, lien, or interest in or to the real property or any part of the property.

EIGHTH CAUSE OF ACTION

(SLANDER OF TITLE)

(Against all Defendants)

118.  Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

119.  Defendants, and each of them, disparaged Plaintiffs' exclusive valid title by and through the preparing, posting, publishing, and recording of the documents previously described herein, including, but not limited to, the Notice of Default, Notice of Trustee's Sale, and Trustee's Deed.

120.  Said Defendants knew or should have known that such documents were improper in that at the time of the execution and delivery of said documents, Defendants had no right, title, or interest in the Property. These documents were naturally and commonly to be interpreted as denying, disparaging, and casting doubt upon Plaintiffs' legal title to the Property. By posting, publishing, and recording said documents, Defendants' disparagement of Plaintiff's legal title was made to the public at large.

121.  As a direct and proximate result of Defendants' conduct in publishing these documents, Plaintiffs' title to the Property has been disparaged and slandered, and there is a cloud on Plaintiff's title, and Plaintiff has suffered, and continues to suffer, damages in an amount to be proved at trial.

122.  As a further proximate result of Defendants' conduct, Plaintiffs have incurred expenses in order to clear title to the Property. Moreover, these expenses are continuing, and Plaintiff will incur additional charges for such purpose until the cloud on Plaintiff's title to the property has been removed. The amounts of future expenses and damages are not ascertainable at this time.

123.  As a further direct and proximate result of Defendants' conduct, Plaintiffs have suffered

humiliation, mental anguish, anxiety, depression, and emotional and physical distress, resulting in the loss of sleep and other injuries to his and her health and well-being, and continues to suffer such injuries on an ongoing basis. The amount of such damages shall be proven at trial.

124.  At the time that the false and disparaging documents were created and published by the Defendants, Defendants knew the documents were false and created and published them with the malicious intent to injure Plaintiff and deprive them of their exclusive right, title, and interest in the Property, and to obtain the Property for their own use by unlawful means.

125.  The conduct of the Defendants in publishing the documents described above was fraudulent, oppressive, and malicious. Therefore, Plaintiffs are entitled to an award of punitive damages in an amount sufficient to punish Defendants for their malicious conduct and deter such misconduct in the future.

## DEMAND FOR JURY TRIAL

**WHEREFORE**, Plaintiffs request for Jury Trial on all causes of action.

## <ins>PRAYER FOR RELIEF</ins>

**WHEREFORE,** Plaintiffs, ask for the following for each Cause of Action to be awarded:

i.  For treble damages for violation of California Homeowner Bill of Rights;

ii.  That the Trustees of the Trusts have no enforceable secured or unsecured claim against the Property;

iii.  Plaintiffs owns in fee simple, and is entitled to the quiet and peaceful possession of, the above-described real property.

iv.  Defendants, and each of them, and all persons claiming under them, have no estate, right, title, lien, or interest in or to the real property or any part of the property.

v.  Plaintiffs are entitled to the exclusive possession of the property;

vi.     For Compensatory Damages in an amount to be determined by proof at trial;

vii.    For Special Damages in an amount to be determined by proof at trial;

viii.   For General Damages in an amount to be determined by proof at trial;

ix.     For Punitive Damages as allowed by law;

x.      For Restitution as allowed by law;

xi.     For Attorney's Fees and Costs of this action;


Dated:_____        Dated:_____



_____            _____
WILLIAM BLACKWELL                  LORETTA BLACKWELL
Plaintiff In Pro Per               Plaintiff In Pro Per

vi.   For Compensatory Damages in an amount to be determined by proof at trial;

vii.   For Special Damages in an amount to be determined by proof at trial;

viii.   For General Damages in an amount to be determined by proof at trial;

ix.   For Punitive Damages as allowed by law;

x.   For Restitution as allowed by law;

xi.   For Attorney's Fees and Costs of this action;

Dated: 3/7/25                                    Dated: 3/7/25

_William Blackwell_                              _Loretta Blackwell_

**WILLIAM BLACKWELL**                            **LORETTA BLACKWELL**
Plaintiff In Pro Per                             Plaintiff In Pro Per

23

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| William Blackwell and Loretta Blackwell<br>1914 Whitman Street Salinas, CA 93906<br><br>TELEPHONE NO.: 831-202-7255     FAX NO.:<br>ATTORNEY FOR *(Name):* | **FILED**<br><br>MAR 10 2025<br><br>CLERK OF THE SUPERIOR COURT<br>~~AGNES NAZARIAN~~ DEPUTY |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF MONTEREY
STREET ADDRESS: 1200 Aguajito Road
MAILING ADDRESS:
CITY AND ZIP CODE: Monterey, California 93940
BRANCH NAME: MONTEREY COURTHOUSE

CASE NAME:
Blackwell v. Carrington Foreclosure Services, LLC, et.al.

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: 25CV001278 |
|---|---|---|
| ☑ Unlimited ☐ Limited<br>(Amount (Amount<br>demanded demanded is<br>exceeds $25,000) $25,000 or less) | ☐ Counter ☐ Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | JUDGE:<br>DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
- ☐ Auto (22)
- ☐ Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
- ☐ Asbestos (04)
- ☐ Product liability (24)
- ☐ Medical malpractice (45)
- ☐ Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
- ☐ Business tort/unfair business practice (07)
- ☐ Civil rights (08)
- ☐ Defamation (13)
- ☐ Fraud (16)
- ☐ Intellectual property (19)
- ☐ Professional negligence (25)
- ☐ Other non-PI/PD/WD tort (35)

**Employment**
- ☐ Wrongful termination (36)
- ☐ Other employment (15)

**Contract**
- ☐ Breach of contract/warranty (06)
- ☐ Rule 3.740 collections (09)
- ☐ Other collections (09)
- ☐ Insurance coverage (18)
- ☐ Other contract (37)

**Real Property**
- ☐ Eminent domain/Inverse condemnation (14)
- ☐ Wrongful eviction (33)
- ☑ Other real property (26)

**Unlawful Detainer**
- ☐ Commercial (31)
- ☐ Residential (32)
- ☐ Drugs (38)

**Judicial Review**
- ☐ Asset forfeiture (05)
- ☐ Petition re: arbitration award (11)
- ☐ Writ of mandate (02)
- ☐ Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
- ☐ Antitrust/Trade regulation (03)
- ☐ Construction defect (10)
- ☐ Mass tort (40)
- ☐ Securities litigation (28)
- ☐ Environmental/Toxic tort (30)
- ☐ Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
- ☐ Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
- ☐ RICO (27)
- ☐ Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
- ☐ Partnership and corporate governance (21)
- ☐ Other petition *(not specified above)* (43)

2. This case ☐ is ☑ is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties
   b. ☐ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. ☐ Substantial amount of documentary evidence
   d. ☐ Large number of witnesses
   e. ☐ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. ☐ Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. ☑ monetary   b. ☑ nonmonetary; declaratory or injunctive relief   c. ☑ punitive
4. Number of causes of action *(specify):* 8
5. This case ☐ is ☑ is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: 3/7/25

WILLIAM BLACKWELL   LORETTA BLACKWELL
(TYPE OR PRINT NAME)

*William Blackwell   Loretta Blackwell*
(SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on **all** other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
www.courtinfo.ca.gov

| SUPERIOR COURT OF MONTEREY COUNTY | |
| --- | --- |
| **Monterey Branch**, 1200 Aguajito Road, Monterey, CA 93940 | |
| **William Blackwell, et al.** | **CASE NUMBER** **25CV001278** |
| **vs.** **Carrington Foreclosure Services, LLC, et al.** | **Case Management Conference** |

## NOTICE OF ASSIGNMENT AND CASE MANAGEMENT CONFERENCE

**Your case is assigned for all purposes to the Honorable Ian A. Rivamonte.**

Your civil case, excluding unlawful detainer and collections are a rotational assignment among three judicial officers:
Judge Thomas W. Wills; Judge Carrie M. Panetta, Judge Ian A. Rivamonte

Your provisionally complex case or "is complex" designation at case initiation are assigned ODD/EVEN by ending number among two judicial officers:     Judge Thomas W. Wills and Judge Carrie M. Panetta

This notice, which includes the Alternative Dispute Resolution (ADR) information packet (Cl-127), <u>must</u> be served together with the Summons and Complaint or Petition pursuant to California Rule of Court 3.221. *Parties are required to follow the complex case instructions, case management rules as outlined in California Rule of Court 3.722 and Chapter 6 of the Local Rules of Court, all can be found on the court website at* www.monterey.courts.ca.gov. A case management statement from each party or joint statement shall be filed prior to the conference as outlined in California Rule of Court 3.725.

---

**Date: <u>July 08, 2025</u>     Time:9:00 AM     Department 13A \***

**Location: <u>Monterey Courthouse, 1200 AGUAJITO ROAD, MONTEREY, CA 93940</u>**
\*If appearing remotely be sure and access the correct link:
Judge Thomas W. Wills – Dept. 15
Judge Carrie M. Panetta – Dept. 14
Judge Ian A. Rivamonte – 13a
Information regarding remote appearance can be found at: https://www.monterey.courts.ca.gov/remote

---

## COURT REPORTER INFORMATION

**Effective January 1, 2022**, Monterey County Superior Court will only be providing court reporter services in the following, statutorily-mandated case types:

1. Death penalty proceedings under Penal Code §190.9;
2. Juvenile proceedings not before a referee or commissioner under Welfare & Institutions Code §347 and §677;
3. Felony cases under Code of Civil Procedure §269; and
4. "Withdrawal of consent to adopt" proceedings under Family Code §9005.

---

**NOTICE OF ALL PURPOSE CASE ASSIGNMENT**     [Rev. June 2022]

**(Civil)**

# EXHIBIT A

Recording Requested By:
P. WEBBER-JAMES

After Recording Return To:
COUNTRYWIDE HOME LOANS, INC.

MS SV-79 DOCUMENT PROCESSING
P.O.Box 10423
Van Nuys, CA 91410-0423
Prepared By:
DAT NGUYEN



Stephen L. Vagnini
Monterey County Recorder
Recorded at the request of
**Fidelity Title**

RALICIA
1/13/2006
14:02:12

DOCUMENT: **2006004281**

Titles: 1/ Pages: 17

Fees. . . . . 56.00
Taxes. . . .
Other. . . .
AMT PAID   $56.00

---

[Space Above This Line For Recording Data]

05162591SH        00012516005601006
[Escrow/Closing #]        [Doc ID #]

# DEED OF TRUST

MIN 1000157-0006303782-0

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated   JANUARY 09, 2006     , together with all Riders to this document.

**(B) "Borrower"** is

WILLIAM E BLACKWELL JR, AND LORETTA C BLACKWELL, HUSBAND AND WIFE AS JOINT TENANTS

**CALIFORNIA**-Single Family-**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS**

Page 1 of 16

**-6A(CA)** (0207)    CHL (08/05)(d)    VMP Mortgage Solutions, Inc. (800)521-7291        **Form 3005 1/01**
CONV/VA





DOC ID #: 00012516005601006

Borrower's address is

1914 WHITMAN STREET, SALINAS, CA 93906-5307

Borrower is the trustor under this Security Instrument.

**(C) "Lender"** is

AMERICA'S WHOLESALE LENDER

Lender is a CORPORATION

organized and existing under the laws of NEW YORK

Lender's address is

4500 Park Granada MSN# SVB-314, Calabasas, CA 91302-1613

**(D) "Trustee"** is

RECON TRUST COMPANY, N.A.

225 WEST HILLCREST DRIVE MSN TO-02, THOUSAND OAKS, CA 91360

**(E) "MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

**(F) "Note"** means the promissory note signed by Borrower and dated   JANUARY 09, 2006   . The Note states that Borrower owes Lender

FOUR HUNDRED FORTY FIVE THOUSAND and 00/100

Dollars (U.S. $ 445,000.00       ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than   FEBRUARY 01, 2036   .

**(G) "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

**(H) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

**(I) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☐ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☐ Other(s) [specify] |

**(J) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**(K) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(L) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(M) "Escrow Items"** means those items that are described in Section 3.

**(N) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii)

<img> -6A(CA) (0207)     **CHL (08/05)**     Page 2 of 16         **Form 3005 1/01**

DOC ID #: 00012516005601006

conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(O) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(P) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(Q) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(R) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the
COUNTY                of               MONTEREY               :
[Type of Recording Jurisdiction]                        [Name of Recording Jurisdiction]

LOT 4, IN BLOCK 1, AS SAID LOT AND BLOCK ARE SHOWN ON THAT CERTAIN MAP ENTITLED, "TRACT NO. 1133, HERITAGE SQUARE, UNITE NO. 1", FILED FOR RECORD JULY 16, 1990 IN THE OFFICE OF THE COUNTY RECORDER OF THE COUNTY OF MONTEREY, STATE OF CALIFORNIA, IN VOLUME 17 OF MAPS, "CITIES AND TOWNS", AT PAGE 13.

Parcel ID Number: 153251004                              which currently has the address of
1914 WHITMAN STREET, SALINAS
[Street/City]
California 93906-5307 ("Property Address"):
[Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including,

VMP -6A(CA) (0207)      CHL (08/05)         Page 3 of 16                    Form 3005 1/01

DOC ID #: 00012516005601006

but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

 **-6A(CA)** (0207)        **CHL (08/05)**                    Page 4 of 16                                **Form 3005  1/01**

DOC ID #: 00012516005601006

    **3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

    Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

    The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

    If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

    Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

DOC ID #: 00012516005601006

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of

DOC ID #: 00012516005601006

paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

DOC ID #: 00012516005601006

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower

VMP ®-6A(CA) (0207)        CHL (08/05)            Page 8 of 16                    Form 3005 1/01

DOC ID #: 0001251600560I006

shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security

VMP® -6A(CA) (0207)          CHL (08/05)          Page 9 of 16          Form 3005 1/01

DOC ID #: 00012516005601006

Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

VMP -6A(CA) (0207)　　　CHL (08/05)　　　Page 10 of 16　　　　　Form 3005 1/01

DOC ID #: 00012516005601006

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

DOC ID #: 00012516005601006

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in

 -6A(CA) (0207)          CHL (08/05)                    Page 12 of 16                              Form 3005 1/01

DOC ID #: 00012516005601006

compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

 -6A(CA) (0207)     CHL (08/05)     Page 13 of 16     Form 3005 1/01

DOC ID #: 00012516005601006

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. **Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

24. **Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

25. **Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

DOC ID #: 00012516005601006

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____ (Seal)
WILLIAM E. BLACKWELL JR　　　　　　-Borrower

_____ (Seal)
LORETTA C. BLACKWELL　　　　　　　-Borrower

_____ (Seal)
　　　　　　　　　　　　　　　　　-Borrower

_____ (Seal)
　　　　　　　　　　　　　　　　　-Borrower

-6A(CA) (0207)　　CHL (08/05)　　Page 15 of 16　　　　Form 3005 1/01

DOC ID #: 00012516005601006

**State of California**
**County of**  MONTEREY                                    } ss.

On JANUARY 09, 2006 ___ before me, ___ADRIANA   P.   CUTSHALL___
                                              personally appeared
___WILLIAM  E.   BLACKWELL JR.  AND   LORETTA  E. BLACKWELL___
_____
_____
_____
_____
_____, personally known to me
(or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to
the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized
capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of
which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_Adriana P. Cutshall_ (Seal)

ADRIANA P. CUTSHALL
Commission # 1569430
Notary Public - California
Monterey County
My Comm. Expires Apr 15, 2009

-6A(CA) (0207)        CHL (08/05)          Page 16 of 16                    Form 3005  1/01

Title No. 05-**162591**-A
Locate No. CAFNT0927-0927-0001-0000162591

## LEGAL DESCRIPTION

### EXHIBIT "A"

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF SALINAS, COUNTY OF MONTEREY, STATE OF CALIFORNIA AND IS DESCRIBED AS FOLLOWS:

Lot 4, in Block 1, as said lot and block are shown on that certain map entitled, "Tract No. 1133, Heritage Square, Unit No. 1", filed for record July 16, 1990 in the office of the County Recorder of the County of Monterey, State of California, in Volume 17 of maps, "Cities and Towns", at page 13.

APN: 153-251-004



END OF DOCUMENT

2

CLTA Preliminary Report Form (11/17/04)

# EXHIBIT B



Recording Requested By:
**Bank of America**
Prepared By: **Danilo Cuenca**
**1800 Tapo Canyon Road**
**Simi Valley, CA 93063**
**800-444-4302**
When recorded mail to:
**CoreLogic**
**Mail Stop: ASGN**
**1 CoreLogic Drive**
**Westlake, TX 76262-9823**

DocID#    **17212516005650623**
Property Address:
**1914 Whitman St**
**Salinas, CA 93906-5307**
CA0-ADT   19631413   8/21/2012

Stephen L. Vagnini     CRSUSY
Monterey County Recorder    8/27/2012
Recorded at the request of    11:02:43
**Bank**

DOCUMENT: **2012049705**    Titles: 1/ Pages: 2

| | |
|---|---|
| Fees.... | 15.00 |
| Taxes... | |
| Other... | |
| AMT PAID | $15.00 |

This space for Recorder's use

MIN #: 1000157-0006303782-0      MERS Phone #: 888-679-6377

## ASSIGNMENT OF DEED OF TRUST

For Value Received, the undersigned holder of a Deed of Trust (herein "Assignor") whose address is **1901 E Voorhees Street, Suite C, Danville, IL 61834** does hereby grant, sell, assign, transfer and convey unto **THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF THE CWABS, INC., ASSET-BACKED CERTIFICATES, SERIES 2006-5** whose address is C/O BAC, M/C: CA6-914-01-43, 1800 Tapo Canyon Road, Simi Valley, CA 93063 all beneficial interest under that certain Deed of Trust described below together with the note(s) and obligations therein described and the money due and to become due thereon with interest and all rights accrued or to accrue under said Deed of Trust.

| | |
|---|---|
| Original Lender: | **AMERICA'S WHOLESALE LENDER** |
| Original Borrower(s): | **WILLIAM E BLACKWELL JR, AND LORETTA C BLACKWELL, HUSBAND AND WIFE AS JOINT TENANTS** |
| Original Trustee: | **RECON TRUST COMPANY, N.A.** |
| Date of Deed of Trust: | **1/9/2006** |
| Original Loan Amount: | **$445,000.00** |

Recorded in Monterey County, CA on: 1/13/2006, book N/A, page N/A and instrument number 2006004281

IN WITNESS WHEREOF, the undersigned has caused this Assignment of Deed of Trust to be executed on

—— AUG 2 1 2012

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.

By: _____
Beverly Brooks
Assistant Secretary

# EXHIBIT C

Recording Requested By:
**Bank of America**
Prepared By: Diana De Avila
1800 Tapo Canyon Road
Simi Valley, CA 93063
800-444-4302
When recorded mail to:
**CoreLogic**
**Mail Stop: ASGN**
1 CoreLogic Drive
Westlake, TX 76262-9823

DocID# 62517835229918222
Property Address:
**1914 Whitman St**
**Salinas, CA 93906-5307**
CA0M-ADT 31285087  11/10/2014  FCL01

Stephen L. Vagnini            CRSUSY
Monterey County Recorder      12/08/2014
Recorded at the request of    14:55:15
**Bank**

DOCUMENT: **2014061415**

| Titles: 1/ | Pages: 2 |
| --- | --- |
| Fees.... | 24.00 |
| Taxes... | |
| Other... | |
| AMT PAID | $24.00 |

This space for Recorder's use

MIN #: 1001337-0002455819-2          MERS Phone #: 888-679-6377

# ASSIGNMENT OF DEED OF TRUST

For Value Received, **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.** (herein "Assignor"), whose address is **P.O. Box 2026, Flint, MI 48501-2026, AS NOMINEE FOR COUNTRYWIDE BANK, FSB, ITS SUCCESSORS AND ASSIGNS** hereby assign and transfer to **BANK OF AMERICA NA** (herein "Assignee"), whose address is **C/O BAC, M/C: CA6-914-01-43, 1800 TAPO CANYON ROAD, SIMI VALLEY, CA 93063**, and its successors and assigns all its right, title, and interest in and to a certain Deed Of Trust described below.

| | |
| --- | --- |
| Beneficiary: | **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR COUNTRYWIDE BANK, FSB, ITS SUCCESSORS AND ASSIGNS** |
| Original Borrower(s): | **WILLIAM E BLACKWELL JR, AND LORETTA C BLACKWELL, HUSBAND AND WIFE AS JOINT TENANTS** |
| Original Trustee: | **RECONTRUST COMPANY, N.A** |
| Date of Deed of Trust: | 8/25/2007 |
| Original Loan Amount: | $16,021.07 |

Recorded in **Monterey County, CA** on: **9/4/2007**, book **N/A**, page **N/A** and instrument number **2007068790**

**MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS, INC., AS NOMINEE FOR COUNTRYWIDE
BANK, FSB, ITS SUCCESSORS AND ASSIGNS**

By:                               ,
      Beverly Brooks
      Assistant Secretary
Date _____ NOV 17 2014

**EXHIBIT D**

SERVICELINK-ER SIMPLIFILE

RECORDING REQUESTED BY:

ServiceLink, A Black Knight Financial Services Company

AND WHEN RECORDED MAIL TO:

Clear Recon Corp.
4375 Jutland Drive Suite 200
San Diego, California 92117
866-931-0036

DOCUMENT: **2016044544**



| Titles: | 1 | Pages: | 1 |
|---|---|---|---|
| Fees . | | 21.00 | |
| Taxes . | | .00 | |
| Other . . | | .00 | |
| AMT PAID | | $21.00 | |

SPACE ABOVE THIS LINE FOR RECORDER'S USE

TS No.: **045149-CA**   Loan No.: *****0056
APN: **153-251-004-000**
Property Address: **1914 WHITMAN STREET, SALINAS, CALIFORNIA 93906-5307**

# SUBSTITUTION OF TRUSTEE

  **WHEREAS, WILLIAM E BLACKWELL JR, AND LORETTA C BLACKWELL, HUSBAND AND WIFE AS JOINT TENANTS** was the original Trustor, **RECON TRUST COMPANY, N.A.** was the original Trustee, and **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC., SOLELY AS NOMINEE FOR AMERICA'S WHOLESALE LENDER, ITS SUCCESSORS AND ASSIGNS** was the original Beneficiary under that certain Deed of Trust dated **1/9/2006** and recorded on **1/13/2006, as Instrument No. 2006004281,** in the Official Records of **Monterey** County, California, and

  **WHEREAS,** the undersigned is the present Beneficiary under said Deed of Trust, and

  **WHEREAS,** the undersigned substitutes a new Trustee under said Deed of Trust in place and instead of said original Trustee, or Successor Trustee, thereunder, in the manner in said Deed of Trust provided,

  **NOW, THEREFORE,** the undersigned hereby substitutes **CLEAR RECON CORP.,** whose address is **4375 Jutland Drive Suite 200, San Diego, California 92117,** as Trustee under said Deed of Trust.

Whenever the context hereof so requires, the masculine gender includes the feminine and/or neuter, and the singular number includes the plural.

Dated: ___July 29, 2016___

THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF THE CWABS, INC., ASSET-BACKED CERTIFICATES, SERIES 2006-5
by Bank of America, N.A., as Attorney in Fact

_Erick E. Walker_     09/29/2016
Erick E. Walker
Assistant Vice President

STATE of ___Texas___
COUNTY of ___Dallas___

Before me, ___SANDRA BRYAN___, the undersigned officer, on this the ___29___ day of ___July___, 20_16_, personally appeared ___Erick E. Walker___,
☐ known to me or, ☒ through production of ___Texas Driver's License___ as identification, who identified her/himself to be the _Assistant Vice President_ of _Bank of America, N.A._, the person and officer whose name is subscribed to the foregoing instrument, and being authorized to do so, acknowledged that (s)he had executed the foregoing instrument as the act of such corporation for the purpose and consideration described and in the capacity stated.

_Sandra Bryan_ 7-29-2016
SANDRA BRYAN
(Type or print name below signature)

(seal)

SANDRA BRYAN
Notary Public
STATE OF TEXAS
My Comm. Exp. 04-23-17

COMMISSION 12940001-2

# EXHIBIT E

RECORDING REQUESTED BY:
ServiceLink
WHEN RECORDED MAIL TO:

Clear Recon Corp.
4375 Jutland Drive Suite 200
San Diego, California 92117
866-931-0036

Stephen L. Vagnini
Monterey County Recorder

CRMELISSA
8/05/2016
11:12 AM

SERVICELINK-ER SIMPLIFILE
DOCUMENT: **2016044752**



| | | |
|---|---|---|
| Titles: | 1 | Pages: 4 |
| Fees . . . . | | 30.00 |
| Taxes . . . | | .00 |
| Other . . . | | .00 |
| AMT PAID | | $30.00 |

T.S. No.: 045149-CA
APN: 153-251-004-000

Property Address: 1914 WHITMAN STREET,
SALINAS, CALIFORNIA 93906-5307

SPACE ABOVE THIS LINE FOR RECORDER'S USE

Title Order No.: 160183537-CA-VOI

# NOTICE OF DEFAULT

### Pursuant to CA Civil Code 2923.3
## NOTE: THERE IS A SUMMARY OF THE INFORMATION IN THIS DOCUMENT ATTACHED
注：本文件包含一个信息摘要
참고사항: 본 첨부 문서에 정보 요약서가 있습니다
## NOTA: SE ADJUNTA UN RESUMEN DE LA INFORMACIÓN DE ESTE DOCUMENTO
## TALA: MAYROONG BUOD NG IMPORMASYON SA DOKUMENTONG ITO NA NAKALAKIP
## LƯU Ý: KÈM THEO ĐÂY LÀ BÀN TRÌNH BÀY TÓM LƯỢC VỀ THÔNG TIN TRONG TÀI LIỆU NÀY

## IMPORTANT NOTICE
**IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS, IT MAY BE SOLD WITHOUT ANY COURT ACTION, and you may have legal right to bring your account in good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account, which is normally five business days prior to the date set for the sale of your property. No sale date may be set until approximately 90 days from the date this notice of default may be recorded (which date of recordation appears on this notice).**

**This amount is $17,589.26 as of 8/4/2016, and will increase until your account becomes current. While your property is in foreclosure, you still must pay other obligations (such as insurance and taxes) required by your note and deed of trust or mortgage. If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required in the note and deed of trust or mortgage, the beneficiary or mortgagee may insist that you do so in order to reinstate your account in**

CRC NOD 09122014

good standing. In addition, the beneficiary or mortgagee may require as a condition of reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire amount you must pay. You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made. However, you and your beneficiary or mortgagee may mutually agree in writing prior to the time the notice of sale is posted (which may not be earlier than three months after this notice of default is recorded) to, among other things. (1) provide additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2).

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of your property by paying the entire amount demanded by your creditor. To find out the amount you must pay, or to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact:

THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF THE CWABS, INC., ASSET-BACKED CERTIFICATES, SERIES 2006-5
C/O Clear Recon Corp.
4375 Jutland Drive Suite 200
San Diego, California 92117
Phone: 858-750-7600

If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan. Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale, provided the sale is concluded prior to the conclusion of the foreclosure. Remember, YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.

NOTICE IS HEREBY GIVEN: CLEAR RECON CORP. is either the original trustee, the duly appointed substituted trustee or the designated agent of the holder of the beneficial interest under a deed of trust dated 1/9/2006, executed by WILLIAM E BLACKWELL JR, AND LORETTA C BLACKWELL, HUSBAND AND WIFE AS JOINT TENANTS, as Trustor, to secure certain obligations in favor of the beneficiary thereunder, recorded 1/13/2006, as Instrument No. 2006004281, and later modified by a Loan Modification Agreement recorded on 3/6/2013 as Instrument 2013014254, and later modified by a Loan Modification Agreement recorded on 1/25/2016 as Instrument 2016003918, of Official Records in the Office of the Recorder of Monterey County, California, encumbering the land as fully described on said Deed of Trust

**That a breach of, and default in, the obligations for which such Deed of Trust is security has occurred in that payment has not been made of:**

 **Installment of Principal and Interest plus impounds and/or advances which became due on 2/1/2016 plus late charges, and all subsequent installments of principal, interest, balloon payments, plus impounds and/or advances and late charges that become payable.**

**That by reason thereof, THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF THE CWABS, INC., ASSET-BACKED CERTIFICATES, SERIES 2006-5, the present beneficiary under such Deed of Trust has deposited with said trustee such Deed of Trust and all documents evidencing obligations secured thereby and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.**

**CLEAR RECON CORP.**

Date Executed: ___AUG 0 4 2016___     BY: _____

CLARIBEN HUNTINGTON      , Authorized Signor

**CLEAR RECON CORP.**
**4375 Jutland Drive Suite 200**
**San Diego, California 92117**

CRC NOD 09122014

**EXHIBIT F**



**CARRINGTON**
MORTGAGE SERVICES, LLC

P.O. Box 3010 | Anaheim, CA 92803

**Loan Number:** 7000152881
**Notice Date:** 12/04/2018

**CMS Trial Period Plan**

**Mortgagor Name(s)**
WILLIAM E BLACKWELL JR
LORETTA C BLACKWELL
1914 WHITMAN ST
SALINAS        CA 93906

**Property Address:**
1914 WHITMAN STREET
SALINAS        CA 93906

Dear Mortgagor(s),

**Congratulations!** You are eligible for a permanent Loan Modification with Carrington Mortgage Services, LLC ("CMS"), current servicer and authorized agent for THE BANK OF NEW YORK MELLON, F/K/A THE BANK OF NEW YORK AS TRUSTEE FOR REGISTERED HOLDERS OF CWABS, INC., ASSET-BACKED CERTIFICATES, SERIES 2006-5. The next step is for you to begin your Trial Period Plan ("TPP"). The terms and conditions of the TPP are explained below. **To accept this offer** we must receive your Initial TPP Payment which is due on or before 01/01/2019

Your existing loan and loan requirements remain in effect and unchanged during the trial period; however, during the plan period you should make the TPP payments instead of your regular monthly payment *even if you receive a monthly statement with your regular payment amount.*

**Please note:** Each trial payment must be **applied to your account** before the end of the month in which it is due or you will risk losing your eligibility for a permanent Loan Modification. **Upon successful completion of the TPP, you will continue making Trial payments until all parties ratify your final Loan Modification Documents.**

| TPP Schedule | TPP Amount | Due Date |
|---|---|---|
| 1st payment | $3,079.00 | 01/01/2019 |
| 2nd payment | $3,079.00 | 02/01/2019 |
| 3rd payment | $3,079.00 | 03/01/2019 |

During the trial period, you must send your payments using one of the acceptable methods of payment provided below. If you choose to mail your payments we recommend you send them via certified mail for delivery confirmation.

| Loan Servicing Website (LSW) | www.carringtonms.com | |
|---|---|---|
| Western Union: Quick Collect | City Code: CARRINGTONMS | State Code: CA |
| MoneyGram | Receive Code: 7998 | |
| Pay by Phone | 1.866.874.5860 | |
| Payment Mailing Address | Carrington Mortgage Services, LLC | |
| | Cashiering Department 2-270 | |
| | 1600 South Douglass Road, Ste 110 & 200-A | |
| | Anaheim, CA 92806 | |

Please contact us during normal business hours indicated below. To speed the process, it is important that you have your account number when you call.

**Loss Mitigation Department**
**(Phone):** 1.866.874.5860
**(Hours):** Monday through Friday from 9:00am - 7:00pm (Eastern Time)

**Sincerely,**

**Carrington Mortgage Services, LLC**
Carringtonms.com



**CARRINGTON**
MORTGAGE SERVICES, LLC

P.O. Box 3010 | Anaheim, CA 92803

**Loan Number:** 7000152881
**Notice Date:** 12/04/2018

**CMS Trial Period Plan**

## Trial Period Plan Terms and Conditions

CMS' offer to permanently modify your mortgage is contingent upon the subject property being free from any defect, encumbrance, unauthorized conveyance or any other irregularity. If a title search or any other information indicates any title irregularity (such as an unauthorized conveyance or superior lien), this Agreement and CMS' offer to permanently modify your mortgage may be immediately revoked which will be communicated to you in writing. However, in some cases, if there are intervening liens, a subordination agreement or certification from the person or entity that holds the lien or judgment including but not limited to, subordinate lien holders, judgment creditors, and the governmental agencies, may be required in order to permanently modify your mortgage to insure first lien position of the loan modification. Any subordination agreements or certification for this purpose must be recorded. You will be responsible for obtaining a fully executed subordination agreement or certification in a recordable format from the lienholder.

This TPP will not bring your account current during the trial payment period unless such payments are sufficient to completely cure your entire default under the Loan Documents. Your final modified payment should be close to your trial payment, but we reserve the right to adjust the modified payment to take into account final amounts of unpaid interest, additional expenses and advances, and any other delinquent amounts (except late charges) to be added to your loan balance. **You and we agree that:**

1. The terms of your TPP will become effective on the day we receive your initial TPP Payment which is due on or before 01/01/2019.

2. CMS has the right to terminate this plan if any of your TPP payments are not received and applied to your account before the end of the month in which the payment is scheduled to be made.

3. This TPP is not a permanent modification. You must make all of your TPP payments on time and continue to meet all program requirements before we can offer you a final Loan Modification. **Please note** that if you make payments that are greater than your TPP payment amount or if you attempt to pay your TPP payments in advance, we may have to re-evaluate your financial and hardship status, which may affect your eligibility for a permanent Loan Modification.

4. The payments received by CMS under this Plan shall be applied, at CMS' option, first to the oldest payments due, or to any advances or fees due, unless applicable law requires a different application method. If this Plan is canceled and/or terminated for any reason, any funds in a suspense account shall be credited to your loan pursuant to the terms of your Loan Documents and shall not be refunded to you.

5. Upon successful completion of the TPP, you will continue making Trial payments until your final Loan Modification Documents have been ratified by all parties.

6. During the TPP, subject to superseding legal requirements, any pending foreclosure action or proceeding will not be dismissed and may be immediately resumed if you fail to comply with the terms of the TPP. A new notice of default, notice of intent to accelerate, notice of acceleration, or similar notice will not be necessary to continue the foreclosure action (foreclosure notices). You waive any and all rights to receive such foreclosure notices to the extent permitted by applicable law.

7. If your regular monthly payment did not include escrows for taxes and insurance, you will be required to establish an escrow account if your loan is permanently modified and any prior waiver that allowed you to pay directly for taxes and insurance is revoked.

8. Although your original loan documents remain in effect, you should pay the TPP payment instead of the payments required under your loan documents. All terms and provisions of your original mortgage note and mortgage security instrument remain in full force and effect and you will comply with those terms. Nothing in the TPP shall be understood or construed to be a satisfaction or release in whole or in part any of the obligations contained in the loan documents.

9. The TPP may be terminated in the event that you vacate or abandon the subject Property.

10. CMS will not be obligated or bound to make any modification of the Loan Documents if you fail to meet any one of the requirements under this Plan or the Program.



**MORTGAGE SERVICES, LLC**

P.O. Box 3010 | Anaheim, CA 92803

**CMS Trial Period Plan**

**IMPORTANT INFORMATION**

**CMS is a debt collector.**

Your credit score may be adversely affected by accepting the Trial Period Plan. CMS will continue to report your loan payment status to credit reporting agencies as well as your entry into a Trial Period Plan in accordance with the requirements of the Fair Credit Reporting Act and the Consumer Data Industry Association requirements. Completing the trial payment plan will NOT change previous adverse reporting. The impact of a Trial Period Plan on your credit score depends on your entire credit profile. For more information about your credit score, go to: http://www.ftc.gov/bcp/edu/pubs/consumer/credit/cre24.shtm.

Once the Loan Modification is complete, we will report to the credit bureaus as loan modified based on the modification type and will report your account as current so long as your modified payments are made timely.

If you are currently subject to the protections of any automatic stay in bankruptcy, or have obtained a discharge in bankruptcy proceeding without reaffirming the mortgage loan debt, nothing in this Agreement or any other document executed in connection with this Agreement shall be construed as an attempt by CMS to impose personal liability under the Note and Deed of Trust/Mortgage. In such case, this Agreement is entered into in the ordinary course of business between CMS and you in lieu of pursuit of in rem relief to enforce the lien. This Agreement does not revive your personal liability under the Note and Deed of Trust/Mortgage, nor is it an attempt to collect, recover or offset any such debt as a personal liability of you under the Note and Deed of Trust/Mortgage.

**If you are represented by an attorney, please refer this letter to your attorney and provide us with the attorney's name, address, and telephone number.**

If you have additional questions or concerns that CMS was unable to answer please call the Homeowner's HOPE™ Hotline at **1-888-995-HOPE (4673).** This Hotline can help with questions and offers access to free HUD-certified counseling services in English and Spanish.



# EXHIBIT G

**WFG National-Default Services**

RECORDING REQUESTED BY:
**Carrington Foreclosure Services, LLC**

WHEN RECORDED MAIL TO:
**Carrington Foreclosure Services, LLC**
**P.O. Box 3309**
**Anaheim, California 92803**

**Xochitl Marina Camacho**
MontereyCounty Clerk-Recorder
Recorded at the request of:
WFG NATIONAL TITLE INSURANCE

# 2024015616

05/03/2024 01:28:59
Titles: 1     Pages: 4
Fees: $106.00
Taxes: $0.00
AMT PAID: $106.00

_2460817 CAD_

TS No.: **24-31070** A.P.N.: **153-251-004-000**

SPACE ABOVE THIS LINE FOR RECORDER'S USE

## NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

NOTE: THERE IS A SUMMARY OF THE INFORMATION IN THIS DOCUMENT ATTACHED
注：本文件包含一个信息摘要
참고사항: 본 첨부 문서에 정보 요약서가 있습니다
NOTA: SE ADJUNTA UN RESUMEN DE LA INFORMACIÓN DE ESTE DOCUMENTO
TALA: MAYROONG BUOD NG IMPORMASYON SA DOKUMENTONG ITO NA NAKALAKIP
LƯU Ý: KÈM THEO ĐÂY LÀ BẢN TRÌNH BÀY TÓM LƯỢC VỀ THÔNG TIN TRONG TÀI LIỆU NÀY

**PURSUANT TO CIVIL CODE § 2923.3(a), THE SUMMARY OF INFORMATION REFERRED TO ABOVE IS NOT ATTACHED TO THE RECORDED COPY OF THIS DOCUMENT BUT ONLY TO THE COPIES PROVIDED TO THE TRUSTOR.**

### IMPORTANT NOTICE
### IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS IT MAY BE SOLD WITHOUT ANY COURT ACTION,
and you may have the legal right to bring your account in good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account, which is normally five business days prior to the date set for the sale of your property. No sale date may be set until approximately 90 days from the date this notice of default may be recorded (which date of recordation appears on this notice).

This amount is **$50,372.48** as of **5/2/2024**, and will increase until your account becomes current. While your property is in foreclosure, you still must pay other obligations (such as insurance and taxes) required by your note and deed of trust or mortgage. If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required in the note and deed of trust or mortgage, the beneficiary or mortgagee may insist that you do so in order to reinstate your account in good standing. In addition, the beneficiary or mortgagee may require as a condition of reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire amount you must pay. You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made. However, you and your beneficiary or mortgagee may mutually agree in writing prior to the time the notice of sale is posted (which may not be earlier than the three month period stated above) to, among other things. (1) provide

TS No.: **24-31070**

### NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2).

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of your property by paying the entire amount demanded by your creditor. To find out the amount you must pay, or to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact:

**THE BANK OF NEW YORK MELLON,2006-5**
**C/O Carrington Mortgage Services, LLC**
**C/O Carrington Foreclosure Services, LLC**
**P.O. Box 3309**
**Anaheim, California 92803**
**Phone: (888) 313-1969**

**If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan. Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale provided the sale is concluded prior to the conclusion of the foreclosure.**

## Remember, YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.

NOTICE IS HEREBY GIVEN: That **Carrington Foreclosure Services, LLC** is either the original trustee, the duly appointed substituted trustee, or acting as agent for the trustee or beneficiary under a Deed of Trust dated 1/9/2006, executed by **WILLIAM E BLACKWELL JR AND LORETTA C. BLACKWELL HUSBAND AND WIFE AS JOINT TENANTS**, as Trustor, to secure certain obligations in favor of **Mortgage Electronic Registration Systems, Inc., as beneficiary, as nominee for America's Wholesale Lender A Corporation,** as beneficiary, recorded **1/13/2006**, as Instrument No. **2006004281**, in Book , Page , **Loan Modification recorded on 1/25/2016 as Instrument No. 2016003918** of Official Records in the Office of the Recorder of **Monterey** County, California describing land therein as: As more fully described on said Deed of Trust

Such obligations including the **NOTE(S) FOR THE ORIGINAL** sum of **$445,000.00**, that the beneficial interest under such Deed of Trust and the obligations secured thereby are presently held by the undersigned; that a breach of, and default in, the obligations for which such Deed of Trust is security has occurred in that payment has not been made of:

    **Installment of Principal and/or Interest plus impounds and/or advances which became due on 9/1/2023 plus late charges, and all subsequent installments of principal, interest, balloon payments, plus impounds and/or advances and late charges that become payable.**

    That by reason thereof, the present beneficiary under such deed of trust, has executed and delivered to said duly appointed Trustee, a written Declaration of Default and Demand for same, and has deposited with said duly appointed Trustee, such deed of trust and all documents evidencing obligations secured thereby, and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

TS No.: **24-31070**

## NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

**THE BENEFICIARY OR BENEFICIARY'S AUTHORIZED AGENT HAS COMPLIED WITH CIVIL CODE SECTION 2923.5/2923.55  SEE DECLARATION ATTACHED HERETO AND MADE A PART HEREOF.**

**Dated: 5/2/2024**            **Carrington Foreclosure Services, LLC**

BY: _____

Tai Alailima, Director

DocuSign Envelope ID: EEF9588B-CC09-4503-B873-DD3D7DC7453A

# CARRINGTON
### MORTGAGE SERVICES, LLC

P.O. Box 3489, Anaheim, CA 92803
(800) 561-4567

## Declaration Pursuant to California Civil Code § 2923.55(c)

Re:   WILLIAM E BLACKWELL JR and LORETTA C. BLACKWELL
1914 WHITMAN STREET
SALINAS, CA 93906

Account Number:  ******2881

The undersigned, as an authorized agent or employee of the mortgage servicer named below, hereby represents and declares as follows:

1. (x) The mortgage servicer contacted the borrower(s) to assess their financial situation and to explore options to avoid foreclosure. During this contact the borrower(s) was advised he or she has the right to request a follow-up meeting to occur within 14 days from the date of such request.  Further, the borrower(s) was provided the toll-free telephone number to find a HUD-certified housing counseling agency. Thirty days have passed since the initial contact was made.

2. ( ) No contact was made with the borrower despite the due diligence of beneficiary or their authorized agent's pursuant to California Civil Code §2923.55(f). Thirty days have passed since the initial contact was made.

3. ( ) No contact was required pursuant to California Civil Code § 2920.5(c)(2)(A). The borrower has surrendered the secured property as evidenced by a letter confirming the surrender or by delivery of the keys to the secured property to the beneficiary, their authorized agent or the trustee.

4. ( ) No contact was required pursuant to California Civil Code § 2920.5(c)(2)(B). The beneficiary or their authorized agent has evidence and reasonably believes that the borrower has contracted with an organization, person, or entity whose primary business is advising people who have decided to leave their homes on how to extend the foreclosure process and to avoid their contractual obligations to beneficiary.

5. ( ) No contact was required pursuant to California Civil Code 2920.5(c)(2)(C). The beneficiary or their authorized agent has confirmed that the borrower(s) filed a case under Chapter 7, 11, 12, or 13 of Title 11 of the United States Code and the bankruptcy court has not entered an order closing or dismissing the bankruptcy case, or granting relief from a stay of foreclosure.

6. ( ) The provisions of California Civil Code §2923.55 do not apply because the loan is *not* secured by a first lien mortgage or deed of trust on "owner-occupied" residential real property as defined under California Civil Code § 2924.15.

The undersigned instructs the trustee to proceed with foreclosure proceedings and expressly authorizes the trustee or their authorized agent to sign the notice of default containing the declaration regarding borrower contact required pursuant to California Civil Code §2923.55(c).

I certify that this declaration is accurate, complete and supported by competent and reliable evidence which the mortgage servicer has reviewed to substantiate the borrower's default and the right to foreclose, including the borrower's loan status and loan information.

CARRINGTON MORTGAGE SERVICES, LLC

By: _Ami Bhavsar_                    Dated: 4/30/2024

Ami Bhavsar                    Foreclosure Services Manager
[Print Name], as authorized Agent for Mortgage Servicer

# EXHIBIT H

# CARRINGTON
### MORTGAGE SERVICES, LLC
NMLS ID 2600

P.O. Box 3010 | Anaheim, CA 92803

**Mortgagor Name(s):**
WILLIAM E BLACKWELL JR
LORETTA C BLACKWELL
1914 WHITMAN ST
SALINAS        CA 93906

**Property Address:**
1914 WHITMAN STREET
SALINAS        CA 93906

Dear Mortgagor(s):

Enclosed please find the final Loan Modification Agreement and/or Subordinate Note/Mortgage (herein referred to as the "Documents") along with a Name Affidavit**. If you are interested in setting up Auto Draft for your new modified mortgage payments, we encourage you to visit our website at www.carringtonmortgage.com/myloan under "Payment Options" for more details on how to set up Auto Draft.

*__**A Name Affidavit is a document in which a person certifies all the names that have been used by the person. The name affidavit may include maiden name, married name, other names used, and all variations of the names that appear in other documents.__*

**IMPORTANT!** CMS must receive your fully executed Documents, **bearing original signatures,** by no later than than 05/24/2022. Each borrower must sign exactly as the name appears on the signature line. If there has been a change to your name since the origination of your mortgage loan (e.g. re-married, divorced) you must complete the Name Affidavit and provide supporting documents to evidence such a change. Failure to comply with these requirements may affect your eligibility and delay the process.

*__Please be advised that a faxed copy of the Documents does not satisfy the Program requirements and therefore will not be accepted.__*

If you have questions regarding the Documents or experience difficulty reviewing the information, please consult a Loss Mitigation Specialist by calling, 1.800.561.4567, Monday - Friday 9:00am to 7:00pm [Eastern Standard Time].

Please mail all Original Signed Documents attention to:

**Carrington Mortgage Services, LLC**
**c/o Loss Mitigation Post Closing Department**
**1600 South Douglass Road, Suites 110 & 200-A**
**Anaheim, CA  92806**

Sincerely,

**Carrington Mortgage Services, LLC**

Dear Mortgagor(s):

Carrington Mortgage Services, LLC (CMS) requires that you complete this Name Affidavit if your name has been changed since the origination of your mortgage loan and/or does not match the name as it appears directly below and within the enclosed Documents.

**A Name Affidavit is also referred to as:**
Also Known As Certificate / AKA Statement – To show variations of your name used to execute other documents
Now Known As Certificate / NKA Statement – To show a change in name due to marriage and/or divorce

<u>WILLIAM E BLACKWELL JR</u>

_____
Signature

<u>LORETTA C BLACKWELL</u>

_____
Signature

THIS IS TO CERTIFY THAT MY/OUR LEGAL SIGNATURE(S) IS/ARE AS WRITTEN AND TYPED BELOW.  This signature must <u>exactly match</u> signatures on all Documents.

I, <u>WILLIAM E BLACKWELL JR,</u> certify that I am also known as:

_____
Print Name (Variation)

_____
Sample Signature (Variation)

_____
Print Name (Variation)

_____
Sample Signature (Variation)

I, <u>LORETTA C BLACKWELL,</u> certify that I am also known as:

_____
Print Name (Variation)

_____
Sample Signature (Variation)

_____
Print Name (Variation)

_____
Sample Signature (Variation)



**CARRINGTON**
MORTGAGE SERVICES, LLC
NMLS ID #2600

P.O. Box 3010
Anaheim, CA 92803

**Date:** 05/10/22                                      **Loan Number:** 7000152881

# LOAN MODIFICATION AGREEMENT
# BALLOON PAYMENT DISCLOSURE

*Notice: Read Before Signing Your Loan Documents*

Property Address: 1914 WHITMAN STREET  SALINAS          CA 93906

The Loan Modification Agreement ("Agreement") provides for Term Extension (as defined below) and/or deferral of a portion of the principal balance of your Note.

The modified principal balance of your Note will be $647,488.77 (the "New Principal Balance") of which $142,000.00 shall be deferred (the "Total Deferred Principal Balance"). If your loan was previously modified, this Total Deferred Principal Balance includes prior deferment in the amount of $0.00 plus the New Deferred Principal Balance in the amount of $142,000.00. You will not be required to pay interest or make monthly payments on the Total Deferred Principal Balance. The New Principal Balance minus the Total Deferred Principal Balance shall be referred to as the "Interest Bearing Principal Balance" and this amount is $505,488.77. Interest at the rate of 5.12500% will begin to accrue on the Interest Bearing Principal Balance as of 05/01/2022.

This Agreement provides for 165 monthly payments of principal and interest, with the initial monthly payment in the amount of $2,479.45. This monthly payment is calculated using a 480-month amortization period from the effective date of this Loan Modification (referred to herein as "Term Extension") while the modified principal balance of your Note and all accrued and unpaid interest must be paid in full no later than the Maturity Date of your original Note. Assuming that all of the monthly payments have been paid exactly on the date that each payment is due, a final balloon payment of the then-outstanding Interest Bearing Principal Balance plus all accrued interest remaining unpaid plus the Total Deferred Principal Balance, which is a total sum of approximately $570,908.51 shall become due and payable on 02/01/2036 (the "Maturity Date").

The amount of Total Deferred Principal Balance and any other amounts still owed under your Loan Documents will result in a balloon payment fully due and payable upon the earliest of: (i) the date you sell the property securing the Mortgage, (ii) the date you refinance the loan, (iii) the date the entire loan is paid in full, or (iv) the Maturity Date.

If you make a partial prepayment of principal, the Lender may apply that partial prepayment first to the Total Deferred Principal Balance before applying such partial prepayment to the Interest Bearing Principal Balance or any other amounts due.

**DO NOT SIGN ANY LOAN DOCUMENTS IF YOU HAVE ANY OUTSTANDING QUESTIONS ABOUT YOUR LOAN PAYMENTS OR THIS BALLOON PAYMENT DISCLOSURE**

THIS LOAN IS PAYABLE IN FULL AT MATURITY OR EARLIER IF ANY ONE OF THE EVENTS DESCRIBED ABOVE OCCURS. YOU MUST REPAY THE ENTIRE INTEREST BEARING PRINCIPAL BALANCE PLUS ALL ACCRUED AND UNPAID INTEREST THEN DUE PLUS THE TOTAL DEFERRED PRINCIPAL BALANCE. UNLESS OTHERWISE EXPRESSLY DISCLOSED IN THE AGREEMENT, THE LENDER IN THIS TRANSACTION IS UNDER NO OBLIGATION TO REFINANCE THE LOAN AT THAT TIME. YOU WILL, THEREFORE, BE REQUIRED TO MAKE PAYMENT OUT OF OTHER ASSETS THAT YOU MAY OWN, OR YOU WILL HAVE TO FIND A LENDER, WHICH MAY BE THE LENDER WITH WHOM YOU HAVE THIS LOAN, WHO IS WILLING TO LEND YOU THE MONEY. IF THIS LENDER, OR ANY OTHER LENDER, AGREES TO REFINANCE THIS LOAN, YOU MAY BE REQUIRED TO PAY THE THEN-PREVAILING INTEREST RATE, WHICH MAY BE HIGHER OR LOWER THAN THE INTEREST RATE SPECIFIED IN THE AGREEMENT. IF YOU REFINANCE THIS LOAN AT MATURITY, YOU MAY HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW LOAN, EVEN IF YOU OBTAIN REFINANCING FROM THE SAME LENDER.



**Loan Number:** 7000152881

**ACKNOWLEDGEMENT** (ALL BORROWERS MUST SIGN AND DATE):

I/We have read and hereby acknowledge receipt of the above notice concerning the balloon payment provisions of the Agreement.

I/We will execute such other documents as may be reasonably necessary to correct the terms and conditions of this Disclosure if an error is detected after execution of this Disclosure. I/We understand that a corrected Disclosure will be provided to me/us for my/our signature. At Lender's option, this Disclosure will be void and of no legal effect upon notice of such error. If I/we elect not to sign a corrected Disclosure, the terms of the Agreement shall continue in full force and effect, such terms will not be modified by this Disclosure.

_____   (Date) _____
WILLIAM E BLACKWELL JR

_____   (Date) _____
LORETTA C BLACKWELL





**CARRINGTON**
MORTGAGE SERVICES, LLC
NMLS ID #2600

**IMPORTANT DISCLOSURES**

**-VERBAL INQUIRIES & COMPLAINTS-**
For verbal inquiries and complaints about your mortgage loan, please contact the CUSTOMER SERVICE DEPARTMENT for Carrington Mortgage Services, LLC, by calling 1-800-561-4567. The CUSTOMER SERVICE DEPARTMENT for Carrington Mortgage Services, LLC is toll free and you may call from 8:00 a.m. to 8:00 p.m. Eastern Time, Monday through Friday. You may also visit our website at **https://carringtonmortgage.com/**.

**-IMPORTANT BANKRUPTCY NOTICE-**
If you have been discharged from personal liability on the mortgage because of bankruptcy proceedings and have not reaffirmed the mortgage, or if you are the subject of a pending bankruptcy proceeding, this letter is not an attempt to collect a debt from you but merely provides informational notice regarding the status of the loan. If you are represented by an attorney with respect to your mortgage, please forward this document to your attorney.

**-CREDIT REPORTING AND DIRECT DISPUTES-**
We may report information about your account to credit bureaus. Late payments, missed payments, or other defaults on your account may be reflected in your credit report. As required by law, you are hereby notified that a negative credit report reflecting on your credit record may be submitted to a credit reporting agency if you fail to fulfill the terms of your credit obligations. If you have concerns regarding the accuracy of any information contained in a consumer report pertaining to this account, you may send a direct dispute to Carrington Mortgage Services, LLC by fax to 800-486-5134 or in writing to Carrington Mortgage Services, LLC, and Attention: Customer Service, P.O. Box 5001, Westfield, IN 46074. Please include your loan number on all pages of the correspondence.

**-MINI MIRANDA-**
This communication is from a debt collector and it is for the purpose of collecting a debt and any information obtained will be used for that purpose. This notice is required by the provisions of the Fair Debt Collection Practices Act and does not imply that we are attempting to collect money from anyone who has discharged the debt under the bankruptcy laws of the United States.

**-HUD COUNSELOR INFORMATION-**
If you would like counseling or assistance, you may obtain a list of HUD-approved homeownership counselors or counseling organizations in your area by calling the HUD nationwide toll-free telephone number at (800) 569-4287 or toll-free TDD (800) 877-8339, or by going to http://www.hud.gov/offices/hsg/sfh/hcc/hcs.cfm. You can also contact the CFPB at (855) 411-2372, or by going to www.consumerfinance.gov/find-a-housing-counselor.

**-EQUAL CREDIT OPPORTUNITY ACT NOTICE-**
The Federal Equal Credit Opportunity Act prohibits creditors from discriminating against credit applicants on the basis of race, color, religion, national origin, sex, marital status, or age (provided the applicant has the capacity to enter into a binding contract); because all or part of the applicant's income derives from any public assistance program; or because the applicant has, in good faith, exercised any right under the Consumer Credit Protection Act. The Federal Agency that administers Carrington Mortgage Services, LLC's compliance with this law is the Federal Trade Commission, Equal Credit Opportunity, Washington, DC 20580.

**-SCRA DISCLOSURE-**
**MILITARY PERSONNEL/SERVICEMEMBERS:** If you or your spouse is a member of the military, please contact us immediately. The federal Servicemembers Civil Relief Act and comparable state laws afford significant protections and benefits to eligible military service personnel, including protections from foreclosure as well as interest rate relief. For additional information and to determine eligibility please contact our Military Assistance Team toll free at 1-888-267-5474.

**-NOTICES OF ERROR AND INFORMATION REQUESTS, QUALIFIED WRITTEN REQUESTS (QWR)-**
Written complaints and inquiries classified as Notices of Error and Information Requests or QWRs must be submitted to Carrington Mortgage Services, LLC by fax to 800-486-5134, or in writing to Carrington Mortgage Services, LLC, and Attention: Customer Service, P.O. Box 5001, Westfield, IN 46074. Please include your loan number on all pages of the correspondence. You have the right to request documents we relied upon in reaching our determination. You may request such documents or receive further assistance by contacting the Customer Service Department for Carrington Mortgage Services, LLC toll free at (800) 561-4567, Monday through Friday, 8:00 a.m. to 8:00 p.m. Eastern Time. You may also visit our website at https://carringtonmortgage.com/.

01/14/2022

# CARRINGTON
**MORTGAGE SERVICES, LLC**
NMLS ID #2600

P.O. Box 3010 | Anaheim, CA 92803

**Final Loan Modification Agreement**

| **Mortgagor Name(s)** | **Property Address:** |
|---|---|
| WILLIAM E BLACKWELL JR | 1914 WHITMAN STREET |
| LORETTA C BLACKWELL | SALINAS      CA 93906 |
| 1914 WHITMAN ST | |
| SALINAS      CA 93906 | |

Dear Mortgagor(s):

Carrington Mortgage Services, LLC, as servicer and authorized agent of THE BANK OF NEW YORK MELLON, F/K/A THE BANK OF NEW YORK AS TRUSTEE FOR REGISTERED HOLDERS OF CWABS, INC., ASSET-BACKED CERTIFICATES, SERIES 2006-5 (the "Lender"), is offering you this Loan Modification Agreement ("Agreement"), dated 05/10/22, which modifies the term of your existing mortgage loan as described in detail below.

## I. DEFINITIONS

**"Mortgage"** shall mean the mortgage, deed of trust, security deed or other security instrument encumbering the Property and corresponding to the above CMS Loan Number and recorded in the public records of MONTEREY County.

**"Note"** shall mean the note or other instrument of the same date and secured by the Mortgage.

**"Property"** shall mean the real and personal property described in the Mortgage and located at:

1914 WHITMAN STREET
SALINAS      CA 93906

**"Balloon Payment"** shall mean a final payment of the aggregate total amount of the current and any prior deferred non-interest bearing principal balance plus the then-outstanding interest bearing principal balance plus all earned interest remaining unpaid and due on the earlier of (i.) the date you sell the property securing the Mortgage, (ii.) the date you refinance the loan, (iii.) the date the loan is paid in full, or (iv.) the Maturity Date

**"Deferment"** shall mean any portion of the unpaid principal balance of the Note and Security Instrument that has been deferred, interest free, and shall only become payable on the earlier of (i.) the date you sell the property securing the Mortgage, (ii.) the date you refinance the loan, (iii.) the date the loan is paid in full, or (iv.) the Maturity Date.

**"Write Off"**, as referenced in this agreement, includes any of the following (i.) unpaid and deferred interest, (ii.) deferred principal, (iii.) escrow advances, (iv.) administrative fees, (v.) unpaid late fees, or other costs that have been forgiven and waived from your account and shall not be subject to any collection efforts by CMS.

**CARRINGTON**
MORTGAGE SERVICES, LLC
NMLS ID #2600
P.O. Box 3010 | Anaheim, CA 92803

**Loan Number:** 7000152881
**Notice Date:** 05/10/2022

**Final Loan Modification Agreement**

## II. TERMS AND CONDITIONS

If your representations and covenants in Section 1 continue to be true in all material respects, then this Loan Modification Agreement ("Agreement") will, as set forth in Section III, amend and supplement (i.) the Mortgage on the Property, and (ii.) the Note secured by the Mortgage. The Mortgage and Note together, as they may previously have been amended, are referred to as the "Loan Documents." Capitalized terms used in this Agreement and not defined have the meaning given to them in Loan Documents.

This Agreement will not take effect unless the preconditions set forth in Section 2 have been satisfied.

1. **Representations and Covenants.** You certify, represent to Lender, covenant and agree:

    A. You are experiencing a financial hardship, and as a result, (i.) you are in default under the Loan Documents or default is imminent, and (ii.) you do not have sufficient income or access to sufficient liquid assets to make the monthly mortgage payments now or in the near future;

    B. At least one of the borrowers signing this Agreement lives in the Property as a principal residence, and the Property has not been condemned;

    C. There has been no impermissible change in the ownership of the Property since you signed the Loan Documents. A permissible change would be any transfer that the Lender is required by law to allow, such as a transfer to add or remove a family member, spouse or domestic partner of the undersigned in the event of a death, divorce or marriage;

    D. You have provided documentation for **all** income that your household receives;

    E. Under penalty of perjury, all documents and information you have provided to the Lender in connection with this Agreement, including the documents and information regarding your eligibility for the Program, are true and correct;

2. **Acknowledgements and Preconditions to Modification.** You understand and acknowledge that:

    A. If prior to the Modification Effective Date as set forth in Section III, the Lender determines that any of the representations in Section 1 are no longer true and correct or any covenant in Section 1 has not been performed, the Loan Documents will not be modified and this Agreement will terminate. In that event, the Lender will have all of the rights and remedies provided by the Loan Documents.

    B. The Loan Documents will not be modified unless (i.) The Lender receives an executed copy of this Agreement bearing your signature, on or prior to the last business day of the same month in which the Effective Date falls and (ii.) the Modification Effective Date (as defined in Section III) has occurred. You further understand and agree that the Lender will not be obligated or bound to make any modification of the Loan Documents if you fail to meet any one of the requirements under this Agreement.

    C. You agree that failure to pay the initial payment due on **06/01/2022** (the "First Payment Due Date") shall be considered a breach of this Agreement and this Agreement will terminate. The Lender shall immediately resume any pending foreclosure action or proceeding. A new notice of default, notice of intent to accelerate, notice of acceleration, or similar notice will not be necessary to continue the foreclosure action ("Foreclosure Notices"). You waive any and all rights to receive such Foreclosure Notices to the extent permitted by applicable law.

    D. You have been advised to discuss the ramifications of this Agreement with your attorney and/or tax/financial advisor if any of the following (i.) unpaid and deferred interest, (ii.) deferred principal, (iii.) escrow advances, (iv.) administrative fees, (v.) unpaid late fees, or other costs have been forgiven and waived from the account and shall not be subject to any collection efforts by CMS.

# CARRINGTON
**MORTGAGE SERVICES, LLC**
NMLS ID #2600

P.O. Box 3010 | Anaheim, CA 92803

**Final Loan Modification Agreement**

## III. MODIFICATION TERMS

If your representations and covenants in Section II.1 continue to be true in all material respects and all preconditions to the modification set forth in Section II.2 have been met, the Loan Documents will automatically become modified on **05/01/2022** (the "Modification Effective Date"). You agree to and understand the following:

A. The Maturity Date of your modified loan is **02/01/2036.**

B. The new interest bearing principal balance of your loan is **$505,488.77** ("Modified Balance").

C. Interest at the rate of **5.12500%** will begin to accrue on your loan as of **05/01/2022.**

D. The new total monthly payment including principal, interest, property taxes, hazard insurance, and any other applicable escrow items is **$3,042.79** and is due on **06/01/2022**

E. Unpaid amounts totaling **$113,431.37** were added to your modified principal balance which included unpaid and deferred interest, fees, escrow advances and other costs, but excluding unpaid late charges, less any amounts paid to the Lender but not previously credited to your Loan.

F. **$142,000.00** of your unpaid principal balance has been deferred ("New Deferment"). The New Deferred Principal Balance remains non-interest bearing and shall become due and payable as a Balloon Payment on the earlier of: (i.) the date you sell the property securing the Mortgage, (ii.) the date you refinance the loan, (iii.) the date the entire loan is paid in full, or (iv.) the Maturity Date.

G. If your loan was previously modified and the terms of such modification included a prior deferment of non-interest bearing unpaid principal balance, the prior non-interest bearing deferred unpaid principal balance is taken into consideration when calculating the new modified interest bearing principal balance. Our records indicate that you had a prior deferment of non-interest bearing unpaid principal balance in the amount of **$53,693.76** ("Prior Deferment(s)").

H. **$2,607.12** will be written off which constitutes a forgiveness of debt and you will not be required to repay this amount.

| CURRENT LOAN TERMS | |
|---|---|
| Interest Rate | 4.87500 |
| P&I Payment | $2,556.03 |
| Escrow Payment | $554.65 |
| Total Monthly Payment | $3,110.68 |
| Contractual Due Date | 07/01/20 |

| MODIFIED LOAN TERMS | |
|---|---|
| Interest Rate | 5.12500 |
| P&I Payment | $2,479.45 |
| *Escrow Payment | $563.34 |
| Total Monthly Payment | $3,042.79 |
| 1st Payment Due Date | 06/01/22 |
| Unpaid Amounts | $113,431.37 |

| | |
|---|---|
| Principal Balance | $534,057.40 |
| **Prior Deferred Principal Balance | $53,693.76 |
| Total Principal Balance | $587,751.16 |

| | |
|---|---|
| Modified Balance | $505,488.77 |
| New Deferred Principal Balance | $142,000.00 |
| New Principal Balance | $647,488.77 |
| Balloon Payment | $570,908.51 |

*Escrow payments may be adjusted periodically in accordance with applicable law and therefore your total monthly payment may change accordingly. If you did not have an escrow account before, the timing of your tax and insurance bills may require that you make a payment to cover any such bills when they come due. This is known as an escrow shortage and can either be paid in a lump sum in the amount of **$0.00** when the loan is modified or over the next 60-months in the amount of **$0.00** per month which has already been included in the above Escrow Payment amount.

# CARRINGTON
**MORTGAGE SERVICES, LLC**
NMLS ID #2600

P.O. Box 3010 | Anaheim, CA 92803

**Any non-interest bearing unpaid principal balance that was previously deferred has been added to the interest bearing unpaid principal balance and taken into consideration when calculating current Loan Modification terms.

## IV. ADDITIONAL AGREEMENTS AND LEGAL NOTICES

1. You agree to the following:

A. You will be in default if you do not comply with the terms of the Loan Documents, as modified by this Agreement.

B. By accepting this Loan Modification your credit score may be adversely affected. The impact of a permanent modification on a credit score depends on your entire credit profile. For more information, please visit: http://www.ftc.gov/bcp/edu/pubs/consumer/credit/cre24.shtm.

C. The modified interest rate and principal and interest portion of your modified payment will remain fixed until the original Maturity Date of your loan.

D. If you still owe any amounts under the Loan Documents due to any applicable Deferment and/or increase in the amortization period, you will be responsible to pay those amounts as a Balloon Payment.

E. That all persons who signed the Loan Documents or their authorized representative(s) have signed this Agreement, unless (i) a borrower or co-borrower is deceased; (ii) the borrower and co-borrower are divorced and the property has been transferred to one spouse in the divorce decree, the spouse who no longer has an interest in the property need not sign this Agreement (although the non-signing spouse may continue to be held liable for the obligation under the Loan Documents); or (iii) the Lender has waived this requirement in writing.

F. Any fees and/or expenses incurred in connection with servicing your loan that may be legally charged to your account, but have not been charged to your account as of the Modification Effective Date, may be charged to your account at a later date and shall be your responsibility to pay in full. For example, if your loan is in foreclosure there may be foreclosure fees and costs that have been incurred but not yet assessed to your account as of the Modification Effective Date; you will remain liable for any such costs, fees and/or expenses.

G. That this Agreement shall supersede the terms of any modification, forbearance, trial period plan or other workout plan that you previously entered into with Lender or any prior lender.

H. To comply, except to the extent that they are modified by this Agreement, with all covenants, agreements, and requirements of Loan Documents including your agreement to make all payments of taxes, insurance premiums, assessments, Escrow Items, impounds, and all other payments, the amount of which may change periodically over the term of your Loan.

I. That this Agreement constitutes notice that the Lender's waiver as to payment of Escrow Items, if any, has been revoked, and you have been advised of the amount needed to fully fund your escrow account.

J. That the Loan Documents as modified by this Agreement are duly valid, binding agreements, enforceable in accordance with their terms and are hereby reaffirmed.

K. That all terms and provisions of the Loan Documents, except as expressly modified by this Agreement, remain in full force and effect; nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents; and that except as otherwise specifically provided in, and as expressly modified by, this Agreement, the Lender and you will be bound by, and will comply with, all of the terms and conditions of the Loan Documents.

**CARRINGTON**
MORTGAGE SERVICES, LLC
NMLS ID #2600
P.O. Box 3010 | Anaheim, CA 92803

**Loan Number:** 7000152881
**Notice Date:** 05/10/2022

**Final Loan Modification Agreement**

L.   That, as of the Modification Effective Date, if any provision in the Note or in any addendum or amendment to the Note allowed for the assessment of a penalty for full or partial prepayment of the Note, such provision is null and void.

M.   That, as of the Modification Effective Date, notwithstanding any other provision of the Loan Documents, if all or any part of the Property or any interest in it is sold or transferred without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by the Mortgage. Lender shall not exercise this option if state or federal law, rules or regulations prohibit the exercise of such option as of the date of such sale or transfer. If Lender exercises this option, Lender shall give you notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which you must pay all sums secured by the Mortgage. If you fail to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Mortgage without further notice or demand on you.

N.   That, as of the Modification Effective Date, you understand that the Lender will only allow the transfer and assumption of the Loan, including this Agreement, to a transferee of your property as permitted under the Garn St. Germain Act, 12 U.S.C. Section 1701j-3. A buyer or transferee of the Property will not be permitted, under any other circumstance, to assume the Loan. Except as noted herein, this Agreement may not be assigned to, or assumed by, a buyer or transferee of the Property.

O.   You understand that you are not required to waive or release any claims and/or defenses in connection with this Agreement

P.   That you will cooperate fully with Lender in obtaining any title endorsement(s), or similar title insurance product(s), and/or subordination agreement(s) that are necessary or required by the Lender's procedures to ensure that the modified mortgage Loan is in first lien position and/or is fully enforceable upon modification and that if, under any circumstance and notwithstanding anything else to the contrary in this Agreement, the Lender does not receive such title endorsement(s), title insurance product(s) and/or subordination agreement(s), then the terms of this Agreement will not become effective on the Modification Effective Date and the Agreement will be null and void.

Q.   That you will execute such other documents as may be reasonably necessary to either (i.) consummate the terms and conditions of this Agreement; or (ii.) correct the terms and conditions of this Agreement if an error is detected after execution of this Agreement. You understand that either a corrected Agreement or a letter agreement containing the correction will be provided to you for your signature. At Lender's option, this Agreement will be void and of no legal effect upon notice of such error. If you elect not to sign any such corrective documentation, the terms of the original Loan Documents shall continue in full force and effect, such terms will not be modified by this Agreement.

R.   Mortgage Electronic Registration Systems, Inc. ("MERS") is a separate corporation organized and existing under the laws of Delaware and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, (888) 679-MERS. In cases where the loan has been registered with MERS who has only legal title to the interests granted by the borrower in the mortgage and who is acting solely as nominee for Lender and Lender's successors and assigns, MERS has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling the mortgage loan.

S.   That if any document related to the Loan Documents and/or this Agreement is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the Loan as modified, or is otherwise missing, you will comply with the Lender's request to execute, acknowledge, initial and deliver to the Lender any documentation the Lender deems necessary. All documents the Lender requests of you under this Section shall be referred to as "Documents." You agree to deliver the Documents within ten (10) days after you receive the Lender's written request for such replacement.



**CARRINGTON**
MORTGAGE SERVICES, LLC
NMLS ID #2600

P.O. Box 3010 | Anaheim, CA 92803

Loan Number: 7000152881
Notice Date: 05/10/2022

**Final Loan Modification Agreement**

T.  That the mortgage insurance premiums on your Loan, if applicable, may increase as a result of the capitalization which will result in a higher total monthly payment. Furthermore, the date on which you may request cancellation of mortgage insurance may change as a result of the New Principal Balance.

U.  If you are currently subject to the protections of any automatic stay in bankruptcy, or have obtained a discharge in bankruptcy proceeding, nothing in this Agreement or any other document executed in connection with this Agreement shall be construed as an attempt by CMS to impose personal liability under the Note and Deed of Trust/Mortgage. Pursuant to 11 U.S.C. Section 524(j), and in the ordinary course of business between the Lender and you, this Agreement is entered into in order to seek or obtain periodic payments associated with a valid security interest in lieu of pursuit of in rem relief to enforce the lien. This Agreement does not revive your personal liability under the Note and Deed of Trust/Mortgage, nor is it an attempt to collect, recover or offset any such debt as a personal liability of Borrower under the Note and Deed of Trust/Mortgage. The Lender does, however, retain the right, despite the discharge, to enforce its security interest against the Subject Real Property by foreclosing in the event of a future default.

In Witness Whereof, the Lender and you have executed this Agreement.

CARRINGTON MORTAGE SERVICES, LLC As servicer and duly authorized agent for
THE BANK OF NEW YORK MELLON, F/K/A THE BANK OF NEW YORK AS TRUSTEE FOR REGISTERED
HOLDERS OF CWABS, INC., ASSET-BACKED CERTIFICATES, SERIES 2006-5

By: _____
    As Attorney in Fact

    WILLIAM E BLACKWELL JR

_____
    Date

    Date

    LORETTA C BLACKWELL

    Date

_____[Space Below This Line For Acknowledgement]_____



CARRINGTON
MORTGAGE SERVICES, LLC
NMLS ID #2600

**IMPORTANT DISCLOSURES**

**COLORADO Residents Only:** 7200 S. Alton Way, Ste B180, Centennial, CO 80112, (303) 708-8795

**HAWAII Residents Only: Carrington Mortgage Services, LLC is licensed with the State of Hawaii Division of Financial Institutions. You may file complaints about Carrington Mortgage Services, LLC with the Commissioner of Financial Institutions by calling (808) 586-2820 or visiting the division's website for consumer complaints at http://cca.hawaii.gov/dfi/file-a-complaint/. For a list of standard or common loan servicing fees charged by Carrington Mortgage Services, LLC, please visit the website at http://www.carringtonmortgage.com/schedule-of-fees.**

**MASSACHUSETTS:** NOTICE OF IMPORTANT RIGHTS YOU HAVE THE RIGHT TO MAKE A WRITTEN OR ORAL REQUEST THAT TELEPHONE CALLS REGARDING
YOUR DEBT NOT BE MADE TO YOU AT YOUR PLACE OF EMPLOYMENT. ANY SUCH ORAL REQUEST WILL BE VALID FOR ONLY TEN DAYS UNLESS YOU PROVIDE WRITTEN CONFIRMATION OF THE REQUEST POSTMARKED OR DELIVERED WITHIN SEVEN DAYS OF SUCH REQUEST. YOU MAY TERMINATE THIS REQUEST BY WRITING TO THE CREDITOR.

**NEW YORK:**
New York City Department of Consumer Affairs Debt Collection Agency License Numbers: 1264739-DCA; 2101449-DCA; 2027784-DCA; & 2027786-DCA. This Collection agency is licensed by the City of Buffalo license numbers: CAG11-555177; CAG11-555176; CAG15-10033598 & CAG21-10059681.City of Yonkers Debt Collection Agency License Numbers: 9717; 10562; 9837 & 9826

**For New York Residents Only:** You may file complaints about Carrington Mortgage Services, LLC with the New York State Department of Financial Services. You may obtain further information from the New York State Department of Financial Services about the availability of housing counseling services by calling the Department's Consumer Assistance Unit at 1-800-342-3736 or by visiting the Department's website at www.dfs.ny.gov. Carrington Mortgage Services, LLC is registered with the Superintendent of the New York State Department of Financial Services. Carrington Mortgage Services, LLC remains responsible for all actions taken by third-party service providers authorized by Carrington Mortgage Services, LLC to act on its behalf regarding the servicing of your loan.

**NORTH CAROLINA:** Carrington Mortgage Services, LLC is licensed under North Carolina Secure and Fair Enforcement Mortgage Licensing Act and holds North Carolina Collection Agency Licenses with Permit Nos. 102107, 103455 and 112956. Main Office: 1600 South Douglass Road, Suites 110 & 200-A, Anaheim, CA 92806 / Branch Offices: 2100 E. 196th Street, Suites 100 & 200, Westfield, IN 46074 & 6200 Tennyson Parkway, Suites 210 & 110-B, Plano, TX 75024

**OREGON:** Borrowers: The Oregon Division of Financial Regulation (DFR) oversees residential mortgage loan servicers who are responsible for servicing residential mortgage loans in connection with real property located in Oregon and persons required to have a license to service residential mortgage loans in this state. If you have questions regarding your residential mortgage loan, please contact Carrington Mortgage Services, LLC toll-free at 1-800-561-4567. To file a complaint about unlawful conduct by an Oregon licensee or a person required to have an Oregon license, call DFR at (888) 877-4894 or visit http://dfr.oregon.gov.

**TENNESSEE:** This collection agency is licensed by the Collection Service Board of the Department of Commerce and Insurance.

**TEXAS:** Notice to Texas Residents: COMPLAINTS REGARDING THE SERVICING OF YOUR MORTGAGE SHOULD BE SENT TO THE TEXAS DEPARTMENT OF SAVINGS AND MORTGAGE LENDING, 2601 NORTH
LAMAR, SUITE 201, AUSTIN, TEXAS 78705. A TOLL-FREE CONSUMER HOTLINE IS AVAILABLE AT 1-877276-5550. A complaint form and instructions may be downloaded and printed from the Department's website located at www.sml.texas.gov or obtained from the department upon request by mail at the address above, by telephone at its toll-free consumer hotline listed above, or by email at smlinfo@sml.texas.gov.

01/14/2022